# SYLVESTER L. V. YOUNG *v.* STATE OF MARYLAND.

*Criminal Law—Evidence of Other Crimes.*

On a prosecution for embezzlement, it was error to admit evidence of other similar offenses committed by defendant, at different times and at the expense of different people, no one of which was connected in any way with or related to that for which defendant was being tried.

*Decided January 13th, 1927.*

Appeal from the Circuit Court for Allegany County (WAGAMAN and DOUB, JJ.).

Criminal proceeding against Sylvester L. V. Young. From a judgment of conviction, he appeals. *Reversed.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, and PARKE, JJ.

*Omer T. Kaylor* and *Saul Praeger,* for the appellant.

*Herbert Levy, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General,* and *Ellsworth R. Roulette, State's Attorney for Washington County,* on the brief, for the State.

ADKINS, J., delivered the opinion of the Court.

Sylvester L. V. Young was tried and convicted on an indictment for embezzlement, and sentenced to serve a term of seven years in the Maryland penitentiary. This appeal is from that judgment.

There was a demurrer to the indictment, which was overruled. Appellant in his brief does not point out any error

in the ruling on the demurrer and we find none. The trans-
action out of which the indictment arose was as follows:

Mrs. Mattie L. Carter, the prosecuting witness, purchased
a house through the traverser for $1,850. Of this, $500
was paid in cash and Young borrowed for her $1,200 on
first mortgage, and the vendor took a second mortgage for
$150. Payments in small amounts from time to time were
made by Mrs. Carter to Young. Out of these payments the
second mortgage was paid, and interest on the first mortgage,
but the balance of the payments, which were within a few
dollars of enough to pay off the entire indebtedness, was
used by Young for his own purposes.

Mrs. Carter testified: "I asked Mr. Young to arrange
a mortgage for me so that I could make payments from
time to time as best I could. He said I could pay him just
as I felt like it and just as I got the money. * * * I was to
pay the interest and principal to him. I know that when
I made payments to Mr. Young from time to time he said
it would cut the interest down."

Young testified that he had been in the real estate busi-
ness since 1904; that he had an arrangement with Mrs.
Carter how the $1,200 mortgage was to be paid. "The
arrangement was that she would pay me monthly payments
at her convenience, and that I would invest and use the
money, allowing her the interest thereon until such time
as the full $1,200 would be paid. I was to allow her interest
on these installments, which were to be paid at various times,
and when the interest came due on the mortgage, I used
that interest money to help pay the interest and she paid
me the balance of the interest due. * * * I turned the interest
over to the mortgagee as agreed. I carried out the agreement
which I had with Mrs. Carter with the exception of paying
over the $1,200 at the appointed time." He explained that
he could not pay it because of heavy losses from bad invest-
ments which left him penniless.

There are twenty-two bills of exception, all, except two,
which were not pressed and in which we find no error, to

rulings of the trial court permitting testimony to be offered by the State relative to transactions other than those mentioned in the indictment. One of these was with a Mrs. Domberger, another with a Mr. Hottle, and the third with a Mr. Morningstar. The first two were similar to that mentioned in the indictment; the third was of a different character, in that money in this instance was alleged to have been placed with the traverser for investment and improperly appropriated by him to his own use. None of these transactions were connected in any way with, or related to, that for which traverser was being tried, or occurred at the same time. The several parties do not appear to have been in any way connected with the prosecuting witness in this case or with each other. There is nothing in the record to show that any of the transactions in any way led up to or promoted the one mentioned in the indictment, or that they with it were parts of a common plan made with them in view. If the traverser was guilty of all these offenses, there is nothing to show that they were anything more than a series of defalcations which any defaulter might have committed from time to time, without pre-arrangement or design. In other words, there does not appear to be anything in common between them, except that they are similar offenses, alleged to have been committed by the same person, but at different times and at the expense of different people.

The general rule is that, in a prosecution for a particular crime, evidence which in any manner shows or tends to show that accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible. 16 *C. J.* 586; *Meno v. State,* 117 Md. 435; *Curry v. State,* 117 Md. 587; *Avery v. State,* 121 Md. 229; *McClelland v. State,* 138 Md. 533; *Dobbs v. State,* 148 Md. 52; 8 *R. C. L.,* p. 198.

There are certain exceptions to the general rule where the object is to prove motive, intent or guilty knowledge, or to show a general plan or scheme. But whatever may be the object, "proof of a distinct substantive crime is never admissi-

ble unless there is some logical connection between the two, from which it can be said one tends to establish the other. Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burden a trial with multiplied issues, that tend to confuse and mislead the jury. * * * From the nature and prejudicial character of such evidence, it is obvious it should not be received unless the mind plainly perceives that the commission of the one tends, by a visible connection, to prove the commission of the other by the prisoner. It will be found that the courts have always professed to put the admission of the testimony on the ground that there was some logical connection between the crime proposed to be proved other than the tendency to commit one crime as manifested by the tendency to commit the other." 8 *R. C. L.,* sec. 200, p. 206. See also 1 *Wigmore on Evidence,* sec. 304.

There is nothing in the record to bring this case within any of the exceptions to the general rule, under the decisions in this state or according to the great weight of authority in other jurisdictions.

In appellee's brief it is said that the record does not disclose that, as to some of the exceptions, the testimony referred to therein was admitted subject to exception. Appellant, on the other hand, insists that the original record would disclose that all of this character of testimony was admitted subject to exception, and this was not denied in the oral argument. In the record before us the testimony is given in a narrative form, and it does not appear affirmatively that objection was made to questions in the instances referred to. But the motion to strike out at the conclusion of the testimony in each of these exceptions tends to show that all such testimony came in subject to exception. At the conclusion of the narrative of Mrs. Domberger's (the first witness of this character) testimony it is noted in parenthesis, "The testimony of this witness was admitted subject to exception." It is difficult to understand why there should have been a different under-

standing as to other testimony of exactly the same kind. However, it is not necessary to base our decision on, or to pass upon, the testimony about which this controversy exists. It all rests upon the same principle, and there is no ques-. tion that there is a proper exception in regard to Mrs. Domberger's testimony. The refusal to strike out that testimony was prejudicial error.

*Judgment reversed, and new trial awarded.*

PARKE, J., dissents.