**UNITED STATES of America,
Appellee,**

v.

**Andrew A. WILLIAMS, Appellant.**

**No. 301, Docket 72–1934.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 26, 1972.

Decided Dec. 13, 1972.

Paul R. Shanahan, Syracuse, N. Y., for appellant.

Robert E. Wildridge, Asst. U. S. Atty., James M. Sullivan, Jr., U. S. Atty., N. D. N. Y., Syracuse, N. Y., for appellee.

Before MOORE, HAYS and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from a judgment of conviction entered on March 10, 1972 in the Northern District of New York, after a trial conducted before Hon. Lloyd F. MacMahon, United States District Court Judge and a jury. A five count indictment had charged the defendant with filing false tax returns in the tax years 1966, 1967 and 1968 in violation of 26 U.S.C. § 7206(1). It also charged him with tax evasion in 1967 and 1968 in violation of 26 U.S.C. § 7201. The jury returned not guilty verdicts on all the 1966 and 1968 counts, but found him guilty on both 1967 counts (Counts I and IV). On March 10, 1972 the defendant was sentenced to concurrent fines of $2500 on each count (or a total of $2500) plus the costs of prosecution for both counts. He was placed on probation for a period of two years, subject to the condition that he pay all taxes, interest and penalties owed to the Government. Affirmed.

During the tax years in question the appellant, Andrew A. Williams, was employed as a licensed securities broker in the Syracuse, New York office of Loeb Rhoades & Co. At the same time he was associated with his parents in the operation of a vacuum cleaner distributorship in Syracuse for Rexair, Inc. of Detroit, Michigan. Late in 1966 he became Divisional Supervisor of Rexair's Empire State Division which involved enlisting distributors and dealers in upstate New York for which defendant was to be paid a flat $10 per machine override commission. While there is nothing illegal or immoral in the sale of vacuum cleaners, Loeb Rhoades & Co. pursuant to the rules of the New York Stock Exchange prohibited Williams from any outside employment, no matter how pedestrian the venture might be. There is no question but that Williams attempted to conceal his outside employment from Loeb Rhoades. Moreover, it is not disputed that Williams did receive override commissions from Rexair in the sum of $2,404.92 in tax year 1966 and

$31,060 in tax year 1967 which were not reported on his income tax returns. The 1968 tax year overrides of $12,000, according to his evidence, were commissions due to his father. In 1969 after he learned of the criminal investigation which ultimately resulted in his indictment, Williams filed amended returns for 1966 and 1967 and his father filed an amended return for 1968.

■ Appellant's first point on appeal is that the Government's case against Williams was based primarily upon the testimony of Ronald E. Brooks, a public accountant, whose testimony is urged here to be contradictory and incredible. The United States Supreme Court has stated: "The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." Hoffa v. United States, 385 U.S. 293, 311, 87 S. Ct. 408, 418, 17 L.Ed.2d 374 (1966). Here there was a full opportunity for appellant's counsel to examine Brooks with respect to any inconsistent statements. This Circuit has repeatedly held that the credibility of a witness is within the province of the jury. United States v. Taylor, 464 F.2d 240, 245 (1972).

A more substantial argument on appeal relates to the admissibility of Exhibit 25, a false copy of the defendant's 1967 income tax return, which was offered as part of the Government's case in chief. It is not disputed that when Loeb Rhoades & Co. became concerned as to Williams' outside activities, the defendant advised its House Counsel, William J. Fitzpatrick, that the vacuum cleaning business really belonged to his father and his own activities on its behalf were

minimal. In answer to a request for documentary evidence of this, Williams made available to Fitzpatrick, Exhibit 25. This was a photocopy of the defendant's actual 1967 income tax return except that Schedule C which indicated the Rexair income was omitted, and the total net amount shown on the original Schedule C was listed as his wife's miscellaneous income. There is no question but that Williams' motive in supplying this false return was to mislead Loeb Rhoades and to retain his position.

The general rule applicable here is well-recognized: "evidence of similar acts, including other crimes, is admissible when it is substantially relevant for a purpose other than merely to show defendant's criminal character or disposition." United States v. Deaton, 381 F. 2d 114, 117 (2d Cir. 1967). The Government claims that Exhibit 25 was offered as evidence that Williams' 1967 tax understatement of income was not an honest mistake, but rather was deliberate—another similar act showing knowledge and intent to deceive. Appellant claims that the summation of the Assistant United States Attorney indicates that it was introduced for the purpose of establishing his general criminal or immoral character.*

■ We do not believe that the introduction of Exhibit 25 constituted prejudicial error. In his opening to the jury counsel for the defendant made it clear that the basic issue in the case was not whether there had been a failure to report income but rather whether the mistake was honest and unintentional. Exhibit 25 was obviously probative since the element of intent was in issue at the trial and part of the Government's burden of proof. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed.

---

* Is this a photoprint of a truth teller?

I submit to you when we answer that question we have to ask ourselves one more. If the truth would serve Andrew Williams why would he resort to an untruth?

If Andy Williams will misrepresent by means of a phony income tax return some-

thing of beneficial interest on his part at Loeb Rhoades, can we say that he is not a man, can we say that there is no doubt that he is a man who would not hesitate for one minute to give a phony tax return to the United States government.

(Tr. 506)

150 (1954); United States v. Coblentz, 453 F.2d 503 (2d Cir.), cert. denied, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1970).

■ It is true that the trial judge did not discuss this Exhibit in his charge to the jury and did not place any limitation upon the conclusions which might be drawn from its admission or the prosecution's remarks in summing up. However, it must be noted that no objection on the ground now urged on appeal was made on trial. The appellant's objection was: "Exhibit 25 would purport to be a duplicate of Exhibit 2 already in evidence and it is not entirely a duplicate, it is not material or admissible under the scope of this indictment." (Tr. 136) This court has consistently held that an objection state the ground on which inadmissibility is claimed and state this with a reasonable degree of specificity. Here the ground urged is materiality and not the prejudice due to evidence of other criminal acts. It therefore cannot avail appellant here. United States v. Projansky, 465 F.2d 123, 139–141 (2d Cir.), cert. denied, 409 U.S. 1006, 93 S.Ct. 432, 34 L. Ed.2d 299 (1972); United States v. Indiviglio, 352 F.2d 276, 279 (2d Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); 1 J. Wigmore, Evidence § 18, at 338–40 (3d ed. 1940). The appellant here made no request for limiting instructions either at the time Exhibit 25 was introduced into evidence or before the charge was given and no exception to the charge was taken. See Fed.R. Crim.P. 30; United States v. Bozza, 365 F.2d 206, 214 (2d Cir. 1966).

■ There was no further objection made to the remarks of the prosecution during his summation. "Except for flagrant abuse, not present here, this is enough to preclude him from raising the contentions on appeal." United States v. DiBrizzi, 393 F.2d 642, 646 (2d Cir. 1968). Neither can we find "flagrant abuse" here. While this part of the summation may have gone beyond the purpose for which Exhibit 25 was of-

fered, it cannot be denominated a "flagrant abuse." It was certainly not considered to be such by appellant's trial counsel at the time it was uttered.

■ We further see no abuse of discretion in the admission of the Exhibit even if an appropriate objection had been made. The Government's case here depended upon showing that Williams did not make an honest mistake with respect to his 1967 return, and his use of a doctored return for the same year indicates his knowledge of the contents of the report and is therefore probative of intent. In a comparable case involving the making of false and fraudulent affidavits, the Government introduced a false 1968 tax return of the defendant which was offered on cross-examination to attack the defendant's credibility. The exhibit was admitted over objection on the theory that it was probative of his intent even though it involved another crime not charged in the indictment. In sustaining its admission, this court said: "[t]he evidence at issue here, while damaging to defendant's case, was not inflammatory. The fact that a person claims an improper deduction in his income tax return is not the sort of misconduct that ordinarily arouses the irrational passions of the jury. . . ." United States v. Kaufman, 453 F.2d 306, 311 (2d Cir. 1971).

■ We think the factual situation here presents an even stronger case for affirmance. Williams' doctored tax return (Exhibit 25) was not filed with the United States Internal Revenue Service but was shown to his employer. Whatever a taxpaying jury might think of a defendant taking over-generous deductions vis-a-vis the Government, their indignation at the deception of an employer would be predictably more measured. Moonlighting is not an isolated escapade, it is almost a national pastime. The passions of the jury could hardly have been unduly aroused by this rather pitiful stratagem of a married man with six children to conceal his extra-curricular income from his Wall Street brokerage house employer.

The suggestion that the jury was unduly influenced since it convicted only for the 1967 and not the 1966 and 1968 tax year counts, is not persuasive. The Government's strongest case was for this tax year in any event. It was in this year that the undisclosed outside income was highest ($31,000 in comparison to $2400 for 1966 and $12,000 for 1968) and, hence, least likely to be honestly overlooked. The additional tax due on this undeclared income was in excess of $7,000.

Only for this taxable year did Rexair provide the appellant with a Form 1099 made out in his name (Andrew Williams, Jr.), listing his overrides. Furthermore, Williams had admitted to a witness that his tax liability for 1967 was greatly in excess of that which he actually paid.

 The suggestion that this was an unlawful compromise or inconsistent verdict by the jury is perforce untenable. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

Judgment affirmed.