# ROSS *v.* STATE OF MARYLAND

[No. 27, September Term, 1975.]

*Decided January 12, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*John F. Fader* and *John M. Morse* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court. SMITH and O'DONNELL, JJ., dissent and SMITH, J., filed a dissenting opinion in which O'DONNELL, J., concurs at page 675 *infra.*

This appeal stems from a conviction in the Criminal Court of Baltimore where a jury found appellant guilty of the crime of unlawfully possessing heroin with intent to distribute the same. Following affirmance of the conviction by the Court of Special Appeals in *Ross v. State,* 24 Md. App. 246, 330 A. 2d 507 (1975), we granted a writ of certiorari. Our review is limited "solely to the question whether the admission into evidence of testimony by an informer relating to past sales of narcotics in which he and appellant

had participated constituted reversible error." We conclude that it did.

Two indictments were returned in this case. In the first, appellant and a co-defendant, one Clarence Johnson Marable (Marable), were jointly indicted on charges of possession of heroin and possession with intent to distribute on February 6, 1973. The second indictment accused them of conspiring with each other on the same day to violate the Controlled Dangerous Substances Laws of Maryland. The state presented its case through three witnesses: a paid informer named Stephen Brown (Brown), a detective from the narcotics unit of the Baltimore City Police Department, and a forensic chemist.

In essence, the evidence indicated that Brown had been in the employment of both the police and federal narcotics agents as a paid informer for some time prior to the date of the crimes charged in this case. On the day in question, they delivered the sum of $150 to Brown with instructions to make a purchase of narcotics in the vicinity of the 1500 block of Pennsylvania Avenue in the City of Baltimore. There, Brown approached appellant and told him that he wanted to get a "bundle" of narcotics. While appellant was inside a nearby bar seeking "cross town" transportation, Brown called Detective Robert Murray of the police department. Appellant then emerged from the bar with a cab driver who transported them to another location. Brown testified that he paid the $150 to appellant during this trip.

Upon arriving at their destination, appellant entered Marable's residence while Brown waited nearby. At the same time, Detective Murray also waited in an unmarked car parked some 150 feet from where Brown stood. Appellant returned with a package, later found to contain 25 glassine bags of heroin, which he handed to Brown. The detective then arrested appellant who later denied, as did Marable, selling the heroin to Brown. All three had criminal records, but, unlike the other two, appellant had not been convicted on drug-related charges.

While Brown was being interrogated on direct

examination by the prosecuting attorney, this exchange occurred:

"Q. And how long had you known [appellant] prior to this night in question?

"A. Since 1958, around 1958.

"Q. How would you characterize your acquaintanceship with [appellant]?

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Sustained

"Q. [THE PROSECUTING ATTORNEY]: How would you say you knew him then?

"[DEFENSE COUNSEL]: Objection

"THE COURT: Sustained.

"Q. [THE PROSECUTING ATTORNEY]: *Would you tell us what, if any, contact you had had with [appellant] from 1958 up to the date in question, February 6, 1973?*

"[DEFENSE COUNSEL]: Objection.

"THE COURT: On what grounds?

"[DEFENSE COUNSEL]: I think it is leading, number one, Your Honor; and, *I don't see that it has any bearing* at all on the events of February 6, 1973.

"THE COURT: They are superior [conspiracy] charges in the Indictment, and events prior to that may be relevant, and the form of the question, I believe, is not leading. You can answer the question.

"A. We use [sic] to work together *selling narcotics.*" (emphasis added).

The two courts below and the parties have treated the second part of the objection to the critical question as one based on relevancy. We shall do so as well.

A divided Court of Special Appeals held that the question was not objectionable on the basis of relevancy because it included "within its ambit" the date of the alleged offense as

well as "relatively recent contacts." Therefore, since the question concerned the nature of the relationship between appellant and the informer, it sought relevant testimony. Moreover, the court stated, the response, which appellant did not move to strike, "tended to establish 'a common scheme, plan and design on the part of the accused' and was 'related to the crime charged.' "

The state seeks to sustain the decisions of the two courts below by maintaining that the critical question sought to elicit relevant testimony pertaining to appellant's criminal intent and state of mind. Moreover, it argues, appellant did not preserve his objection for appellate review since he moved neither to strike the testimony nor for a mistrial. Finally, the state contends that the error, if any, was harmless. In seeking reversal, appellant urges that the question did not relate to his intent or to any of the other exceptions to the general rule that evidence of other crimes is inadmissible; that since the question, in any event, contemplated no relevant testimony, his objection was preserved; and that the ruling was prejudicial.

Three issues therefore emerge:

1) Was the question proper under one of the recognized exceptions to the general rule that evidence of another and independent crime is inadmissible?

2) Did appellant waive his objection by not moving to strike the witness's response or in failing to move for a mistrial?

3) Was the error harmless?

(1)

As just noted, the state posits its argument that the question was relevant solely on the ground that it sought to elicit testimony of an intent to commit the crimes charged here.[1] We find no merit in this contention.

1. Understandably, the state does not attempt to embrace the reason given by the trial judge in overruling appellant's objection — that the question was proper in light of the conspiracy charge. Wholly apart from its infirmity of remoteness, the question is manifestly not directed at the alleged conspiracy, since it is addressed to the relationship between appellant and the informer. The indictment, however, charges a conspiracy between appellant and Marable.

The frequently enunciated general rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible. *Harrison v. State*, 276 Md. 122, 345 A. 2d 830 (1975), *MacEwen v. State*, 194 Md. 492, 500, 71 A. 2d 464 (1950); *Young v. State*, 152 Md. 89, 91, 136 A. 46 (1927); *Weinstein v. State*, 146 Md. 80, 88, 125 A. 889 (1924); *Wethington v. State*, 3 Md. App. 237, 240, 238 A. 2d 581 (1968); *Gorski v. State*, 1 Md. App. 200, 202, 228 A. 2d 835 (1967). This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is "substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character." C. McCormick, Evidence § 190 (2d ed. 1972).

Moreover, apart from the fundamental proposition that an accused may be convicted only by evidence which shows that he is guilty of the offense charged, and not by evidence which indicates his guilt of entirely unrelated crimes, there are additional reasons underlying the general rule. Evidence of other crimes may tend to confuse the jurors or prejudice their minds against the accused and to predispose them to a belief in his guilt. Finally, unless he knows in advance that evidence of other crimes is to be used against him, the accused will be unprepared to defend against such evidence. *MacEwen v. State, supra,* 194 Md. at 501; Wharton's Criminal Evidence § 240 (Torcia ed. 1972).

There are exceptions to this general exclusionary rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person

charged with the commission of a crime on trial. *Wentz v. State,* 159 Md. 161, 164, 150 A. 278 (1930); *Cothron v. State,* 138 Md. 101, 110, 113 A. 620 (1921); *Chandler v. State,* 23 Md. App. 645, 650, 329 A. 2d 430, *cert. denied,* 274 Md. 726 (1974); *Wethington v. State, Gorski v. State,* both *supra.* Additional exceptions have also been recognized: When the several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other, and to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial, *Berger v. State,* 179 Md. 410, 414, 20 A. 2d 146 (1941); and to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. C. McCormick, Evidence § 190, *supra.*

The state maintains that the disputed testimony was admissible as an exception to the general exclusionary rule to show intent. It rests this contention primarily on a quartet of federal cases, *United States v. Valencia,* 492 F. 2d 1071 (9th Cir. 1974), *United States v. Richardson,* 477 F. 2d 1280 (8th Cir.), *cert. denied,* 414 U. S. 843 (1973), *United States v. Williams,* 470 F. 2d 915 (2d Cir. 1972), and *Robinson v. United States,* 366 F. 2d 575 (10th Cir. 1966), *cert. denied,* 385 U. S. 1009 (1967). None of these cases supports the state's position. *Valencia* and *Richardson,* both of which involved narcotics charges, are singularly unilluminating, since the court in each merely approved the admission into evidence of prior narcotics transactions under the "intent" exception to the general rule, stating the proposition virtually in the abstract without any reference to the necessary facts.

In *Williams,* where the accused was charged with filing false tax returns and with tax evasion, the court sanctioned the admissibility of a false copy of the tax return which the accused had furnished his employer. The accused furnished the false copy to mislead the employer, who did not permit outside employment. Instead of attributing the defendant's supplemental income to him, the false return had listed the amount as his wife's income. The court held the exhibit

admissible to show that the understatement of income had not been an honest mistake. *Robinson* is equally inapposite. There, the narcotics offenses charged in the indictment had occurred on November 13, 23, and on December 5. Evidence of sales on October 3 and 17 of the same year were also admitted to show "a common scheme, plan or design" and "intent." The evidence had reflected an unmistakable pattern of continuous transactions over a period ranging from October through December.

Although specific intent to distribute heroin was an essential element of the crime of which appellant was convicted, the evidence that at some unspecified time or times during the period "from 1958 up to the date in question, February 6, 1973," the informer and the accused had "work[ed] together selling narcotics" no more showed such intent than it established any of the other exceptions to the general rule. We have said that the introduction of evidence which shows other offenses by the accused should be subjected to rigid scrutiny by the courts because of the great potential for danger which characterizes it. *Berger v. State, Young v. State, Weinstein v. State, Gorski v. State,* all *supra; see Wethington v. State, supra.* As we said in *Berger*:

> ". . . To come within the exception to the rule that evidence of previous offenses is irrelevant, there must appear between the previous offense and that with which the defendant is charged some real connection other than the allegation that the offenses have sprung from the same *disposition.* The exception does not go to the extent of sanctioning the admission of evidence of the *'propensity'* of the accused to commit crimes similar to that for which he has been indicted. . . ." 179 Md. at 414 (emphasis added).

The disputed testimony here need hardly be subjected to rigid scrutiny to demonstrate its inadmissibility. Proof that the accused had previously sold narcotics perhaps as long as 15 years before the crime charged in the indictment hardly tends to establish a disposition or propensity to commit the

offense alleged, let alone an intent to do so. The effect of the ruling by the trial judge was to present to the jury evidence of the appellant's bad character before he had taken the stand to testify. Since, the testimony in question came within none of the recognized exceptions to the general rule excluding evidence of other criminal acts, it was irrelevant and therefore inadmissible.

(2)

The state contends that appellant waived any objection he might have had to the irrelevant testimony by not moving to strike the witness's response or for a mistrial. Implicit in this argument is the suggestion that the trial court correctly overruled the objection because the question itself was proper. Hence, it was the answer, not the question, which should have been the target of appellant's attack.

Unquestionably, a motion to strike out an answer is the correct action to take where an objection to a *proper* question is overruled but the answer is unresponsive or otherwise inadmissible, 1 J. Wigmore, Evidence § 18 (3d ed. 1940); or where an objection before answer is not feasible as in the instance of the "forward witness," C. McCormick, Evidence § 52 (2d ed. 1972).

We do not agree, however, with the hypothesis that the question itself was proper, and that therefore it was only the witness's response which was objectionable. As Judge Moore aptly observed in dissenting from the majority opinion of the Court of Special Appeals, we "have here a truly 'dragnet' type inquiry relating to any contacts between the informer and the accused ranging over a period of fifteen years. Such a question is clearly so broad as to be improper." 24 Md. App. at 261. We agree.

Whether evidence is relevant turns on whether it tends to establish a material proposition. *Daniels v. State*, 213 Md. 90, 103, 131 A. 2d 267 (1957); *Hitzelberger v. State*, 174 Md. 152, 161, 197 A. 605 (1938); C. McCormick, Evidence § 185 (2d ed. 1972). We think the question sought testimony which was too remote and uncertain to have had any effect whatever upon the determination of the issues to be tried,

and should have been rejected upon the stated ground of relevancy.

If, in suggesting irrelevancy and remoteness as the grounds for his objection to the question, appellant failed to apprise the court of the danger that other crimes might be revealed in the answer, it was only because the question was so indefinite and overbroad that he could not reasonably have detected its purpose. That the prosecuting attorney was seeking the very answer which the witness gave, however, is now conceded by the state. Close scrutiny of the colloquy preceding the question bears this out. The trial court recognized, correctly we think, that the two preceding questions were irrelevant, and sustained appellant's objections without requesting a statement of grounds. The critical question was nothing more than a thinly veiled effort to elicit the very answer which had been sought in the first instance. But for the mistaken notion that the question was relevant to the conspiracy charge, the trial judge apparently would also have sustained the third objection. We think the question which the informer was permitted to answer was as objectionable as the two prior questions, and that the stated grounds complied with Maryland Rule 522 in all respects.[2]

Where, as here, a timely objection made to an *improper* question is erroneously overruled, a motion to strike or for a mistrial is not essential to preserve the objection for appellate review.

(3)

Finally, the state contends that any error committed by the trial judge was harmless. We disagree.

The essence of the state's argument is that apart from the testimony of the informer, the police detective also observed the transaction and, in fact, relieved the witness of the heroin.

In *Dorsey v. State*, 276 Md. 638, 350 A. 2d 665 (1976),

---

2. Rule 522, made applicable to criminal cases by Rule 725 f, deals with the method of making objections.

written for the Court by Judge O'Donnell, we have just held that where the accused has demonstrated that error existed at trial, reversal of the conviction is required unless the state can show beyond a reasonable doubt that the error did not contribute to the conviction. The essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded.

In applying this test here, we are not persuaded that the error was harmless beyond a reasonable doubt. Weighing heavily against the testimony of the detective is the fact that this case was tried before a jury, see *MacEwen v. State, supra,* 194 Md. at 504; *Gilchrist v. State,* 2 Md. App. 635, 638, 236 A. 2d 299 (1967); *cf. State v. Babb,* 258 Md. 547, 550-51, 267 A. 2d 190 (1970); and that no cautionary instruction was given, see *Cothron v. State, supra,* 138 Md. at 110. Concededly, appellant requested no such instruction, *cf. United States v. Williams, supra,* 470 F. 2d at 918, but his failure to do so does not under these circumstances render the error harmless. *See Wethington v. State, supra,* 3 Md. App. at 242-43. In this connection, we remain mindful, as we said earlier, that testimony of prior crimes should, in all events, be subjected to rigid scrutiny.

Under the circumstances, we are not prepared to hold that the error was harmless beyond a reasonable doubt. We think there is at least a reasonable possibility that the improper testimony of prior criminal conduct contributed to the conviction.

> *Judgment of the Court of Special Appeals reversed; remanded to that court with instructions to remand the case to the Criminal Court of Baltimore for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*

*Smith, J., dissenting:*

I would affirm the Court of Special Appeals.

I think the trial judge did not err when he overruled the objection of defense counsel to the question, my reasons for so believing being as set forth for the Court of Special Appeals by Judge Gilbert in *Ross v. State,* 24 Md. App. 246, 257-60, 330 A. 2d 507 (1975). The majority here seem to have been so mesmerized by the answer to the question that they have been unable to perceive the actual question as it was before the trial judge when he ruled. The question was not objectionable on its face. It is obvious that what was sought to be elicited was the knowledge of the relationship of the parties. It could well have been that they had been associated as neighbors, co-workers, longtime friends or the like.

The ruling only had the effect of " present[ing] to the jury evidence of the appellant's bad character before he had taken the stand to testify" because the answer showed this, not because the question — as heard by the trial judge — called for such an objectionable answer. If counsel for the defense thought the State was seeking an objectionable answer, he could — and should — have stated that fact to the trial judge out of the hearing of the jury and the witness. The court no doubt then would have requested a proffer from the State as to the anticipated answer and the trial judge then could have ruled accordingly.

The command of Maryland Rule 522 d 2 is for "objection to the admissibility of evidence [to] be made at the time when the evidence is offered, *or as soon thereafter as the objection to its admissibility shall have become apparent . . . ."* (Emphasis added.) When the answer, rather than the question, proved objectionable, it became incumbent upon defense counsel to move to strike the answer, thus renewing the objection to the question as particularized by the answer. *See Armour & Co. v. Leasure,* 177 Md. 393, 408, 9 A. 2d 572 (1939). He then would have requested a cautionary instruction from the trial court. Having failed to move to

strike the objectionable answer to an apparently proper question, he now should be foreclosed from complaining.

I am authorized to state that Judge O'Donnell concurs in the views here expressed.