## GHULAM MOHAMMID NASIM v. STATE OF MARYLAND

[No. 151, September Term, 1976.]

*Decided December 3, 1976.*

The cause was argued before MENCHINE, MOORE and LISS, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell* on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *John F. Hanson, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Ghulam Mohammid Nasim (appellant) was brought to a jury trial in the Circuit Court for Baltimore County on three two-count indictments.

In indictment 51980 it was charged in the first count that appellant "did wilfully and maliciously set fire to and burn the dwelling house of Charles Leroy Heim, located at 105 E. Burke Avenue, Towson, Maryland," in violation of Code Article 27, § 6.[1] In the second count of that indictment it was charged that appellant "did wilfully and maliciously set fire to and burn the storehouse of Charles Leroy Heim, located at 105 E. Burke Avenue, Towson, Maryland," in violation of Code Article 27, § 7.[2] Appellant was found guilty under count two; not guilty under count one. He was sentenced to imprisonment for fifteen years.

---

1. Article 27, § 6 reads as follows:

"Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself, or of another, shall be guilty of arson, and upon conviction thereof, be sentenced to the penitentiary for not more than thirty years."

2. Article 27, § 7 reads as follows:

"Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any barn, stable, garage, or other building, whether the property of himself or of another, not a parcel of a dwelling house; or any shop, storehouse, warehouse, factory, mill or other building, whether the property of himself or of another; or any church, meetinghouse, courthouse, workhouse, school, jail or other public building or any public bridge; shall be guilty of a felony and upon conviction thereof, be sentenced to the penitentiary for not more than twenty (20) years."

In indictment 51979 it was charged in the first count that appellant "unlawfully, knowingly and wilfully falsely stated in a sworn statement on proof of loss to the Home Insurance Company in regard to policy number HP 262-1472 that said loss did not originate by any act, design or procurement on [his] part." (fraudulent claim of entitlement). In the second count of that indictment it was charged that appellant "unlawfully, knowingly and wilfully falsely stated in a sworn statement in proof of loss to the Home Insurance Company in regard to policy number HP 262-1472 that said loss under the aforementioned policy is in the amount of $48,000.00." (false claim of amount of loss). Both charges were alleged to have been in violation of Article 48A, § 233.[3] Appellant was convicted under both counts. He was sentenced to a consecutive term of six months under count 1; to a concurrent term of six months under count 2.

He was found not guilty under the third indictment.

In this appeal appellant attacks the admission of evidence of previous fires, asking:

"Did the trial court commit prejudicial error in admitting evidence of previous fires involving the Appellant's property?

A. Was the evidence of the fires irrelevant?

B. Was the evidence of the fires unduly prejudicial?

---

**3.** Article 48A, § 233 reads as follows:

"Any agent, broker, solicitor, examining physician, applicant, or other person, who knowingly or wilfully makes any false or fraudulent statement or representation in or with reference to any application for insurance; or for the purpose of obtaining any money or benefit, knowingly or wilfully presents or causes to be presented a false or fraudulent claim; or any proof in support of such a claim for the payment of the loss upon a contract of insurance; or prepares, makes, or subscribes a false or fraudulent account, certificate, affidavit or proof of loss, or other document or writing, with intent that the same may be presented or used in support of such a claim, shall be guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment for a period of not more than six (6) months, or both such fine and imprisonment in the discretion of the court."

C. Was the error not harmless beyond a reasonable doubt?"

We believe that our discussion of the questions presented should be prefaced by a brief exposition of the manner in which they were presented below and the trial court's basis for admission of the questioned evidence.

On January 14, 1976, trial counsel for the appellant filed a motion for discovery. On January 20, 1976, the State, answering that motion, disclosed, *inter alia,* the following:

"The State intends to call Baltimore County Fire Department Personnel identified herein as expert witnesses concerning Incendiary origin of fires, namely; that fires at 105 E. Burke Avenue, 625 Fairway Drive and 246 Burke Avenue, Baltimore County appeared to be of Incendiary origin."

Thus alerted to the State's purpose to offer evidence of other fires in properties owned or occupied by the appellant, his trial counsel moved early on to exclude evidence relating thereto. After selection of the jury but out of their presence, appellant's trial counsel thus addressed the trial court:

"The Defendant makes a Motion that any and all evidence relating to fires or claims as a result of a fire made or purported to be made by the Defendant be excluded from any mention in these proceedings specifically. It is my understanding that the State intends to use facts and circumstances surrounding fires in 1965, 1968, or thereafter connected with buildings either owned by the Defendant, or leased by the Defendant, and also to introduce evidence with regard to insurance claims made in those regards."

The record shows that there followed a lengthy discussion by the court with counsel for the State and the defense respecting the admissibility of such evidence. The judge, thereafter stated, *inter alia:*

". . . at this point in time, I think that I must deny

[the motion], and believe I am implying [sic] the principles set out in the *Ross* [4] case and *Woods* [5] case, since one, the fire goes back to '65, and the circumstances of the fire and instrumentality of the fire, the nature of the fire, certainly would be relevant, and more importantly, I would say critical to the presentation of the State's case, and I will deny your motion on those two fires." [625 Fairway Drive, October 7, 1965; 246 E. Burke Avenue, June 4, 1968.]

We find that objections to introduction of the questioned evidence that followed thereafter have preserved the issue for our review. The questions presented require us to delineate at some length the facts and circumstances of the fire producing the subject substantive offenses and the facts and circumstances of the previous fires.

The testimony below dealt with three fires of importance to our review in this case. They are: (1) the fire forming the basis for the subject prosecutions at 105 E. Burke Avenue on August 21, 1974; (2) the fire at 625 Fairway Drive on October 7, 1965; and (3) the fire at 246 E. Burke Avenue on June 4, 1968.

1. *The subject fire at 105 E. Burke Avenue on August 21, 1974*

Charles L. Heim, at a constable's sale conducted on July 12, 1974, had purchased for himself and his wife the property known as 105 E. Burke Avenue, Towson, Maryland. The sale was in execution of a judgment of the District Court of Maryland for Baltimore County obtained by Carmen J. diPasquale against Ghulam M. Nasim, the appellant. Following the sale, the purchaser sent a letter to the appellant, advising him of the purchase at judicial sale and giving thirty days for Nasim to vacate the premises.

On the morning of August 21, 1974, a hearing was held in the District Court of Maryland for Baltimore County, on a

---

4. Ross v. State, 276 Md. 664, 350 A. 2d 680 (1976).
5. United States v. Woods, 484 F. 2d 127 (4th Cir. 1973).

motion in behalf of the appellant to set aside the sale. The motion was denied. The appellant was not present at the hearing.

On August 21, 1974, at 9:30 p.m., Heim, who resided in the adjoining property at 107 E. Burke Avenue, observed that 105 was ablaze. The fire department of Baltimore County responded to his call.

Robert Louis Snyder, a Lieutenant of the Baltimore County Fire Department, assigned to investigate fires of suspected incendiary origin, made an inspection of the fire damaged premises. This witness, assigned to the Fire Investigation Division since 1968, also had substantial theoretical training in arson detection at colleges within and without the State of Maryland. He had given testimony in at least fifteen arson cases. His investigation showed two points of origin of the fire. As to the first, an area at the front door, he said the fire was "very intense, burning completely through the flooring. It even burned into the joist of the second floor." As to the second, in a stairwell leading from the first floor to the basement, he said the "steps [were] completely burned out. Part of the support risers were burnt out also."

His continuing testimony included the following:

> ". . . In the basement was observed what is known in our trade as a plant — arson plant, which involved an iron on an ironing board connected to a regular electrical current. Underneath the iron ran a cotton sheet over across the refrigerator or chest type freezer, and lid — continued on into and was stuck — the sheet was stuck in a fuel tank. Also, I observed that there was fuel on the floor. The plant went off, as we call it, — ignited because of the heat of the iron, and the trailer had extended on over and partially had burned, but that got on the floor—

Q It didn't go to the oil tank?

A  Did not, but did burn on the floor area igniting the oil on the floor.

Q  Now, from your experience could you say whether that iron caused that fire in that area?

A  It was believed it caused the fire, yes, sir.

Q  Was the electricity on?

A  Yes, sir. It was.

Q  How did you determine that?

A  Well, sir, I observed that the turn of the meter was going around. That meter was marked floor number 1. There was two meters in the house. Floor number two was not moving. The counter-wheel that goes around on floor number 1 — meter number 1 for the first floor was on. Also, the electric socket was tested by the Chief Electrical Inspector of Baltimore County.

Q  Do you know the results of that test?

A  Yes, sir. The test resulted in that the current was — switch was on for the socket. The switch on the iron was in a position of being on.

Q  Did you recover the iron?

A  Yes, sir. I have it with me."

The witness then testified that there was other evidence that the fire of August 21, 1974, was of incendiary origin. He said:

"Q  Now, from your experience could you say whether or not that [fire of two origins] was of an incendiary origin?

A  Yes, sir. It is.

Q  How could you say that?

A  Well, due to the extreme burning of the flooring without a combustible load.

When we say combustible load, it would be furniture. There was nothing in that area that would cause the intense heat. Also, the jagged

edges of the flooring where the flooring
completely burned away, and also the fire had
burned down into the flooring joist. Fire burns
up; heat rises, but when it goes down, there has
to be something to pull the fire down. The same
with the stairwell. The stairwell, going to the
second point, were separated far enough that
the fire in the stairwell, could not have
completely burned out the area in front of the
front door.

Q Now, from your experience could you comment
one way or the other as to whether or not
either of these fires was caused accidentally or
by natural causes?

A No, sir. It is my opinion that the two fires, both
fires were caused by an incendiary origin.
There was no defective wiring in that area,
because it was checked by myself, and there is
no evidence of any malfunction of the electrical
system."

At the time of the fire Heim did not have a key to the
premises 105 E. Burke Avenue, Nasim having refused to
deliver one.

Nasim was observed to be within the premises on
numerous occasions after the constable's sale. He was not
seen there, however, on the date of the fire.

The Home Insurance Company had issued a policy of fire
insurance for 105 E. Burke Avenue to the appellant on July
16, 1972, for a term of three years. The initial amount of
insurance coverage is not shown in the record, but on April
23, 1974, had been increased to $45,000 on the building;
$27,000 on the contents of the building; $9,000 additional
living expenses, and $4,500 for appurtenant structures.

In early August, 1974, prior to the date of the fire, the
appellant, Edith Peterson, and Randy Sellman had removed
bedroom, dining room, living room, and kitchen furniture
and other household items owned by Peterson from the
premises 105 E. Burke Avenue. In consequence, there was,

at the time of the fire, very little furniture on any floor of the building. Nonetheless, the appellant made oath in a proof of loss executed on November 20, 1974, that he had sustained a loss from the fire in the amount of $48,000.

One Norman Goodman, a Certified Public Insurance Adjuster, who had been requested by the appellant to adjust the alleged losses, testified that on August 26, 1974, he had cancelled a contract to do so because he believed Nasim had no insurable interest in the building and that the sparse contents at the time of the fire were not badly damaged.

Nasim on August 12, 1974, had filed a police complaint that some unknown person had pushed open the kitchen window of 105 E. Burke Avenue. A police investigator met Nasim at the premises and requested appellant to advise whether any property was missing. No response was thereafter forthcoming.

### 2. *The fire at 625 Fairway Drive on October 7, 1965*

Lt. William Harmon, an investigator of suspected arsons for the Baltimore County Fire Department, with seventeen years experience, testified that this fire, originating in the basement, was "caused by an iron that was left on an ironing board in the basement." The premises were occupied by Dr. Nasim, who had explained that "his son had been playing in the basement before they left the house." The witness added that the iron was on the "on" position and could have been turned on by a child, or could have been set there purposely. The record shows that the departure of Nasim from 625 Fairway Drive had preceded discovery of the blaze by a next door neighbor by a very short interval.

Cpl. John Raymon, of the Baltimore County Police, with eighteen and one-half years experience, who had served in the Burglary Investigation Unit for seven years, made an investigation at the fire scene. He testified that he had responded to the fire at 9:15 a.m. on October 7, 1965, following a call by the next door neighbor. He testified that the appellant stated to him in the course of the investigation that "he had left that morning at 9:15, and that he had

secured the house, but it was possible he may have left the kitchen door unlocked."

There was evidence that the appellant instituted an action against Government Employees Insurance Company in connection with this fire loss and that coverage under its policy had been increased from $6,400 to $15,000 on October 2, 1965.

### 3. *The fire at 246 E. Burke Avenue on June 4, 1968*

Paul H. Reinecke, a Fire Chief of the Baltimore County Fire Department since 1967, had attended arson seminars within and without the State, had many years of in-service training and taught arson seminars at the Catonsville Community College. He stated that his personal examination on June 4, 1968, showed four separate origins of a fire in offices occupied by the appellant in the building at 246 E. Burke Avenue. He found three separate origins of the fire caused by flammable liquid with a flash point of 125° fahrenheit. The fourth origin was in a closet containing a gas jet in the open position. The four origins of the fire all were within the office occupied by the appellant and all were incendiary in nature. He testified that there was no forced entry into the building.

Nasim had claimed that his personal difficulties with drug addicts was the likely cause of the June 4, 1968 fire. Corporal Raymon testified that the fire appeared to be arson, and that he saw no evidence of a forced entry into the office. He acknowledged there was a broken window in the office, but pointed out that it had been broken from within the office by throwing a venetian blind through the glass. He said that the venetian blind and all glass particles were on the outside of the building.

A former employee of the appellant testified that before she began giving testimony in the United States District Court for the District of Maryland in an insurance claim stemming from this fire, Nasim "told me not to say anything ... said to tell them that everything was destroyed." She added that it was not true that everything had been destroyed.

Nasim denied that he had set any of the three fires. His testimony was, however, marked by manifest rancor toward those who, in his view, had wrongfully deprived him of his property.

We agree with the trial judge that *Ross v. State*, 276 Md. 664, 350 A. 2d 680 (1976), importantly bears upon the resolution of the questions presented. *Ross* lucidly restates the general rule and the well-recognized exceptions governing admission of evidence of independent offenses, saying at 669-70 [684]:

> "The frequently enunciated general rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible. *Harrison v. State*, 276 Md. 122, 345 A. 2d 830 (1975), *MacEwen v. State*, 194 Md. 492, 500, 71 A. 2d 464 (1950); *Young v. State*, 152 Md. 89, 91, 136 A. 46 (1927); *Weinstein v. State*, 146 Md. 80, 88, 125 A. 889 (1924); *Wethington v. State*, 3 Md. App. 237, 240, 238 A. 2d 581 (1968); *Gorski v. State*, 1 Md. App. 200, 202, 228 A. 2d 835 (1967). This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is 'substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.' C. McCormick, Evidence § 190 (2d ed. 1972).

> \* \* \*

> "There are exceptions to this general exclusionary rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1)

> motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of a crime on trial. *Wentz v. State*, 159 Md. 161, 164, 150 A. 278 (1930); *Cothron v. State*, 138 Md. 101, 110, 113 A. 620 (1921); *Chandler v. State*, 23 Md. App. 645, 650, 329 A. 2d 430, *cert. denied*, 274 Md. 726 (1974); *Wethington v. State*, *Gorski v. State*, both *supra*. Additional exceptions have also been recognized: When the several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other, and to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial, *Berger v. State*, 179 Md. 410, 414, 20 A. 2d 146 (1941); and to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. C. McCormick, Evidence § 190, *supra*."

Another decision of significance in the subject case is *McDowell v. State*, 231 Md. 205, 189 A. 2d 611 (1963), wherein it was said at 210 [614]:

> "Arson is likely to be a clandestine offense and proof of it must often be by circumstantial evidence and inferences which may reasonably be drawn therefrom."

Thus, generally, evidence tending to show malice or motive is admissible in arson cases. Such as, for examples particularly applicable here, evidence showing that the accused increased fire insurance coverage or attributed excessive value to damaged personalty; (*Hooker v. State*, 98 Md. 145, 161, 56 A. 390, 394 (1903)) or tending to show animus stemming from interference by a landlord with possession by a defaulting tenant. *McDowell v. State, supra,* at 208, 214 [612-13, 616].

Appellant suggests that there is no showing that the appellant's efforts to collect insurance benefits from the 1965 and 1968 fires had been fraudulent. Ergo, he argues, evidence concerning such efforts was not relevant in the subject case. We think that the questioned evidence was such as would reasonably permit a conclusion that those efforts were indeed fraudulent and thus be admissible on that account. In any case, even if we assumed the absence of fraud in efforts to secure insurance benefits from the prior fires, the questioned evidence plainly was relevant on other grounds.

We note of course, that there were other, more significant facts, than the mere filing of claims and collecting or attempting to collect for fire losses. The similarity of the cause of the October 7, 1965 and the August 21, 1974 fires was striking. In each instance an electric iron left in an "on" position on an ironing board had effected ignition of the fires.

Appellant argues that because the witness describing the Fairway Drive fire of 1965 conceded that the fire may have been of accidental origin, its relevancy to the subject case was destroyed. We do not agree. Even if it is assumed that the 1965 fire was not of incendiary origin, the relevance of that incident to the subject case is not impaired. *See: People v. Furgerson*, 209 C.A.2d 387 (California, Fourth Dist. 1962).

Whether the iron had been left "on" in 1965 intentionally, accidentally or was the product of a child's innocent act, *the fact remains that Nasim knew that such an occurrence would speedily produce a damaging fire.* This circumstance alone, in view of the fact that such a device was utilized to ignite highly combustible materials in the subject fire gave relevance and materiality to the 1965 fire. It tended "to earmark [it] as the handiwork of the accused." *Ross, supra,* 276 Md. at 670, 350 A. 2d at 684.

The 1968 fire in the office of the appellant at 246 E. Burke Avenue also tended to show a "signature" of the accused. Appellant attributed that fire to a "break in" by another. The evidence demonstrated the falsity of that position, showing instead that the breaking had been accomplished

from within the office. So, in the subject case, the evidence would permit the trier of fact to conclude that the notification to the police of an alleged "break in" at 105 E. Burke Avenue on August 12, 1974, was contrived by the appellant in an effort to divert suspicion from himself with respect to the later fire.

We are persuaded that the questioned evidence, if believed, tended to prove that 105 E. Burke Avenue was burned to defraud the insurer and/or because of rage engendered by a fancied oppression.

Moreover, the incidence of multiple fires in properties owned or occupied by Nasim furnishes an additional basis for their admission. In *United States v. Woods*, 484 F. 2d 127 (4th Cir. 1973), in which the accused had been convicted of the first degree murder of a foster son, the trial court had admitted evidence as to what had happened to other children in the care of the accused. In affirming, the Court, after pointing out (at 133) ". . . that when the crime is one of infanticide or child abuse, evidence of repeated incidents is especially relevant because it may be the only evidence to prove the crime" stated at 135:

> "We reject defendant's argument that the proof was not so clear and convincing that its admissibility should not be sustained. As we stated at the outset, if the evidence with regard to each child is considered separately, it is true that some of the incidents are less conclusive than others; but we think the incidents must be considered collectively, and when they are, an unmistakable pattern emerges. That pattern overwhelmingly establishes defendant's guilt."

We think that the rationale for decision in *Woods, supra*, applies with equal force in the subject arson and fraud prosecutions. We believe that here too "an unmistakable pattern emerges" when the questioned evidence is considered collectively. That pattern would permit, if it would not compel, the triers of fact to conclude that the guilt of the accused had been shown beyond a reasonable doubt.

We regard *Wimpling v. State*, 171 Md. 362, 189 A. 248 (1937), cited by appellant, to be so markedly different factually that it offers him no support.

Because we find no error in the admission of the questioned evidence, no issue of harmless error arises.

*Judgments affirmed.*
*Appellant to pay the costs.*