JAMES PARKER BLACKWELL *v.* STATE
OF MARYLAND

[No. 569, September Term, 1976.]

*Decided February 2, 1977.*

The cause was argued before GILBERT, C. J., and DAVIDSON and LOWE, JJ.

*Thomas A. Rymer,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Naji P. Maloof, State's Attorney for Calvert County,* on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

James Parker Blackwell was convicted by a jury in the Circuit Court for Calvert County of:

1. Murder in the second degree;
2. Manslaughter by motor vehicle;
3. Driving while intoxicated; and
4. Leaving the scene after a fatal accident.

The trial judge sentenced him to 15 years for murder, 3 years for manslaughter, 2 years for driving while intoxicated (second offense) and 6 months for leaving the scene of an accident. The last three sentences were to be consecutive with each other but concurrent with the first.

The evidence indicated that the victim, a teenage girl, was killed while riding her newly purchased ten speed bicycle after 10:00 o'clock on the evening of June 30, 1975. The bicycle was equipped with a front light generated by the bicycle's propulsion, and reflectors on its back, pedals and wheels. The evidence was sufficient to support a rational inference that the victim's death was caused by Blackwell, whose automobile struck her bicycle from behind at a point not more than two feet from the shoulder, although within the travelled portion of the road. The evidence was also sufficient to show that appellant left the scene of the accident without stopping to render assistance, and drove while intoxicated in violation of Md. Code, Art. 66½, §§ 10-104 and 11-902.

Testimony from the State's witnesses that appellant's speed was within the posted limit, when observed immediately before and immediately after the accident, negated any possible inference of excessive speed as a factor causing the accident. There was testimony from two bicyclists that, when appellant left an inn immediately before the accident, his car was weaving from side to side as if having started too fast and was momentarily out of control. An autoist and his passenger testified that, while not having seen the accident, they did come upon the victim as appellant's vehicle was leaving the scene. They observed

that a portion of the vehicle twice left the main portion of the road and travelled briefly on the shoulder.

## Murder

We are first concerned on this appeal with the sufficiency of the evidence of murder in the second degree, the propriety of the instructions related thereto, and the related issue of the effect of evidence of appellant's prior drinking habits, including several instances of intoxication (in the opinion of witnesses), a prior conviction for driving while impaired, and evidence that, while apparently intoxicated, appellant had been involved in an accident 2 or 3 years prior to the accident at issue. The admissibility of this evidence will be considered hereinafter.

The evidence introduced over objection included the testimony of a district court commissioner that appellant had pled guilty to driving while impaired on May 15, 1975. Another witness, the proprietor of an inn, testified that appellant's propensity to overindulge compelled the proprietor to refuse appellant hard beverages, restricting him to the purchase of beer. A third witness' testimony is encapsulated in the State's proffer, later admitted through the witness:

> "Your Honor, we would proffer that this man was a member of the Rescue Squad in 1973 and he personally responded to the scene of an accident which this man was involved in and he was drunk at that time. He will testify to that. He will also testify that he has seen him on numerous occasions since then and on every occasion since then that he's seen him that he has been drunk."

When defense counsel persisted in objecting, the court attempted to justify its rulings concerning prior intoxication:

> "The charge from manslaughter by auto I would not admit nicely but the charge here is murder and one of the essential ingredients of murder is malice. In this case it's going to have to be equivalent of

implied malice. Part of that is the defendant's knowledge of the risk to human life he was taking in the actions he was doing. It seems to me his previous experience with accidents while driving drunk as well as his previous experience with excessive drinking is some evidence for the Jury to consider in deciding what his state of mind was or the condition of his heart. It is equivalent malice is action by a person with a depraved heart may be so it seems to me that the evidence is relevant and the credibility is for the Jury."

The trial judge adhered to his reasoning when he instructed the jury on second degree murder. However, the jury apparently was not clear about the court's instruction on malice, and asked:

"Please define again what constitutes 2nd degree murder explaining the degrees of malice".

After again pointing out that:

"Malice is the distinguishing element which makes the difference between an unlawful killing being murder either in the first or second degree or manslaughter.",

the judge instructed, *inter alia*:

"Now, actual malice is something which indicates a deliberate intent to kill. That's not the only kind of malice. That actual intent which makes it actual malice, you can have what is the equivalent of an actual intent even though the person doing the killing didn't set out specifically to kill the person who died. Now, you will hear that called implied malice. I don't particularly like the term implied malice, equivalent to malice is a better way to express it. Now, when you're trying to decide whether actions which result in death are equivalent to malice or are simply gross, reckless and wanton conduct which we discussed with you

on the manslaughter by automobile charge, you are trying to draw a distinction between two different grades of behavior or conduct. Somewhere in the ascending or descending scale of seriousness, recklessness, wantonness and disregard for human life ceases to be manslaughter and becomes equivalent malice sufficient for you to find murder. The precise line or distinction between them you have to draw. I can't give you a precise line where one becomes the other. I can give you extreme samples on both ends."

Because upon our review of the record we find insufficient evidence of malice, the issue of murder was erroneously presented to the jury.[1]

"Malice is the indispensable ingredient of murder; by its presence, homicide is murder; in its absence, homicide is manslaughter." *Lindsay v. State*, 8 Md. App. 100, 104; see also *Chisley v. State*, 202 Md. 87, 105. Express malice exists whenever an accountable person kills another intentionally, unless the killing is justified or excusable, or unless there are mitigating circumstances. *Lindsay, supra.* The State conceded in its brief that "there was no evidence that the Appellant harbored any ill will against the decedent." That concession, coupled with our observations upon reviewing the record, makes it clear that there was not the slightest evidence of "actual" or "express" malice. These terms are contemporary expressions used to connote an "intent to kill", the sole original intent required to prove murder. See *Evans v. State*, 28 Md. App. 640, 696, *aff'd State v. Evans*, 278 Md. 197.

Even if express malice does not exist, malice may be inferred from proof of certain facts. *Moore v. State*, 15 Md. App. 396, 403-404. This "implied" malice arose from the need felt to punish, as murder, homicides resulting from

---

1. Appellee notes that there was no objection to the instruction as required by Md. Rule 756 (g). Our holding is that the evidence was insufficient and the issue of murder should have been withdrawn upon appellant's motion for judgment of acquittal.

life-endangering intents, even though such intents did not involve a literal intent to kill. As pointed out by Judge Moylan for this Court in *Evans, supra,* those additional mental states were added to the *mens rea* of murder and they are recognized today as:

"1) intent-to-do-serious-bodily-injury murder;

2) felony-murder; and

3) depraved-heart murder. (Perkins gives this mental state the less emotionally charged and probably better label of 'Wanton and Wilful Disregard of Unreasonable Human Risk'.)" (footnote omitted).

*Id.* at 696.

It is apparent that the trial judge submitted the issue of murder to the jury on the assumption that evidence of appellant's "depraved-heart" or, as Judge Moylan noted, what Perkins, *Criminal Law* § 1 at 36-37 (2d Ed.), described as a "Wanton and Wilful Disregard of Unreasonable Human Risk", might be inferred. In discussing this element of implied *mens rea* for murder, Perkins carefully pointed out an important, if narrow, prerequisite to permitting such an inference:

"In other words, the intent to do an act in wanton and wilful disregard of the obvious likelihood of causing death or great bodily injury is a malicious intent. The word 'wanton' is the key word here. For reasons to be emphasized later a motorist who attempts to pass another car on a 'blind curve' may be acting with such criminal negligence that if he causes the death of another in a resulting traffic accident he will be guilty of manslaughter. And such a motorist may be creating fully as great a human hazard as one who shoots into a house or train 'just for kicks', who is guilty of murder if loss of life results. The difference is that in the act of the shooter there is an element of viciousness — an extreme indifference to the value of human life —

that is not found in the act of the motorist. And it is this viciousness which makes the act 'wanton' as well as 'wilful'." (footnote omitted). *Id.* at 37.

We do not believe that an inference of "viciousness" or "extreme indifference to the value of human life" may be drawn from the past, although persistent, drinking habits of an accused. While there may be depraved persons who persistently drink, it does not follow that those who do drink are implicitly depraved. The practice may be reprehensible, but it is not felonious.

It should also be noted that this depraved-heart type of implied malice must contain an element of "willfulness", which connotes a deliberate intent to bring about the result which actually comes to pass, *i.e.*:

"Proceeding from a conscious motion of the will; voluntary.

Intractable; having a headstrong disposition to act by the rule of contradiction.

Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary." (citations omitted). *Black's Law Dictionary* 1773 (rev. 4th ed. 1968).

Unless we assume that appellant's drinking habits fulfill that interpretation of willfulness, rather than viewing his propensity to imbibe as a personal gratification — however selfish and objectionable — the record contains no evidence of "willfulness". There is no evidence to indicate the drinking was motivated by a purposeful or deliberate intent to bring about the tragic result.

Beyond that, we have held that in enacting the manslaughter by automobile statute, Md. Code, Art. 27, § 388, the legislature intended to preempt the subject matter of *unintended* homicides resulting from the operation of a motor vehicle. In a short affirming opinion, the Court of Appeals in *State v. Gibson*, 254 Md. 399, adopted as correct the reasoning of the "careful and thorough opinion of Chief Judge Murphy" then of this Court, now of the Court of

Appeals. In our opinion, 4 Md. App. 236, Chief Judge Murphy said:

> "We believe that the Legislature in enacting Section 388 to punish persons who cause the death of another 'as the result of the driving, operation or control of an automobile * * * in a grossly negligent manner,' intended to treat all unintended homicides thereby resulting the same way, without regard to whether the homicide occurred in the course of doing a lawful or an unlawful act, or whether such act was *malum in se* or merely *malum prohibitum*." *Id.* at 246.

Although in that case the issue was whether the accused could be charged with common law involuntary manslaughter, as well as the statutory manslaughter by automobile, the "careful and thorough" language we used did not restrict the statutory preemption to common law manslaughter, but specifically applied our ruling to encompass *all* "unintended homicides":

> "We conclude, therefore, that in enacting Section 388, the Legislature intended to deal with an entire subject matter — unintended homicides resulting from the operation of a motor vehicle — and that the common law crime of involuntary manslaughter, when based on homicides so occurring, is in conflict with the statute and must yield to it to the extent of the inconsistency. See *Lutz v. State*, 167 Md. 12." *Id.* at 247.

In the absence of evidence of intentional homicide, we hold that the statutory preemption applies as well to second degree murder as it did in *Gibson* to manslaughter. We hasten to add on the other hand, that under proper circumstances where the resultant death was intended, a conviction for murder may result, notwithstanding the use of an automobile as the instrumentality of death. See *Connor v. State*, 225 Md. 543 (defendant intentionally drove over deceased); *Faulcon v. State*, 211 Md. 249 (defendant

intentionally drove over deceased); *Allison v. State,* 203 Md. 1 (defendant pushed deceased from moving car); see generally *Murder-Homicide by Automobile,* 21 A.L.R.3d 116. Furthermore, in a proper case where there is evidence of intentional homicide by use of an automobile, it is not improper to charge both crimes, and, if the evidence is sufficient, to submit both to the jury for its determination of which, if either, is applicable. It is equally apparent, however, that a guilty verdict on *both* counts would be inconsistent.

Manslaughter by Automobile
and
Driving While Intoxicated

Md. Code, Art. 27, § 388 states in pertinent part that:

> "Every person causing the death of another as a result of the driving ... of an automobile ... in a grossly negligent manner, shall be guilty of a misdemeanor to be known as manslaughter by automobile . . . ."

Gross negligence, a prerequisite to conviction, is defined as a "wanton or reckless disregard for human life." *Duren v. State,* 203 Md. 584, 588. It is deceptively akin to the definition of implied "malice", one aspect of the ingredient of murder which distinguishes murder from manslaughter. See *Lindsay, supra.* As indicated above, Perkins defines that malice which we have depicted with the catch phrase "depraved-heart" as a "Wanton and Wilful Disregard of Unreasonable Human Risk." One of two substantial differences between that definition and the definition of manslaughter applicable here is the absence of a need to prove willfulness in manslaughter cases. Murder by implied malice, and manslaughter by gross negligence, are separated by a most narrow line.

The other difference is the expressed use of the term "negligent" as a prerequisite to proof of the lesser crime. While simple negligence will not support a conviction of

manslaughter, *Duren, supra,* a conviction of manslaughter does presuppose proof of the basic elements of negligence as well as "wanton and reckless disregard". An essential element of negligence is that there be some reasonable connection between the act or omission of the defendant and the death that ensued. *State v. Gibson, supra,* 4 Md. App. at 242, n. 3; see also *Palmer v. State,* 223 Md. 341; *Craig v. State,* 200 Md. 590.

We look first to see what evidence appears in the record of appellant having negligently performed a lawful act, or having negligently failed to perform a legal duty — keeping in mind that the degree of negligence must be gross or criminal to support the conviction, *viz.,* it must manifest a wanton disregard for human life. *State v. Gibson, supra,* 4 Md. App. at 242. As summarized by the State's brief, the evidence of negligence was fourfold:

> "The appellant had been drinking in at least three different establishments; had swerved back and forth when he left Solomon's Inn; had been seen driving on the shoulder of the road [after having] left the scene of the accident without rendering aid to the victim; and denied to Corporal Ireland that he even remembered the accident taking place."

The State was able to show that when appellant left the inn just before the accident occurred his conduct gave rise to an inference of insobriety. When seen on the parking lot, he stumbled when he walked and appeared to attempt to enter a brown station wagon before finding and entering his own green station wagon. As he drove off, his car swerved "back and forth across the road":

> "He took off faster than what he could handle it. He was on the other side [of the road] and it took a while to get straightened out."

These observations were made moments after the victim had been seen on her bicycle, riding up the road ahead of appellant but in the same direction. The testimony was clear that her running lights were on and that the bicycle,

purchased that day, was properly equipped with requisite safety devices, including reflectors.

Soon after the victim had been seen proceeding by bicycle on the road away from the inn, appellant's vehicle followed, after the somewhat erratic beginning heretofore described. Moments later, two of the witnesses who had observed appellant on the parking lot proceeded in their vehicle in the same direction as victim and appellant. They came upon the accident scene too late to observe the actual impact, but saw the victim lying beside the road and the taillights of what later proved to be appellant's vehicle departing over a hill. Aware that other persons whom they had passed were approaching on bicycles and could render aid to the victim, the witnesses elected to follow the departing vehicle and obtain an identifying license number. In doing so, they made two pertinent observations during a brief period in which they observed appellant: 1) he was driving under or within the speed limit, but, 2) his car weaved twice in less than a quarter of a mile, back and forth from the road to the shoulder.

Very little evidence was available of the deceased's conduct while riding her bicycle at the time, and that mostly circumstantial.[2] There was ample uncontroverted testimony that the bicycle was new and, as indicated, had all of the safety devices requisite thereto working at the time, including a running light and reflectors. Circumstantial evidence showed that the victim was struck not more than two feet from the right shoulder of the road, indicating that she was as nearly to the right side of the roadway as was practicable, conforming to her statutory duty. See Md. Code, Art. 66½, § 11-1205.[3] Nothing indicated a violation of any

---

**2.** As has been frequently noted, the law makes no distinction between direct evidence of the fact and evidence of circumstances from which the existence of the fact may be inferred:

" 'No greater degree of certainty is required when the evidence is circumstantial than when it is direct, for in either case the trier of fact must be convinced beyond a reasonable doubt of the guilt of the accused.' " Robinson v. State, 18 Md. App. 678, 701.

**3.** The record indicates that the speed limit on that portion of the highway was 50 miles per hour. In addition, the shoulder of the roadway

duty on her part, and she was thus entitled to all of the rights of any other vehicle on the road. See Md. Code, Art. 66¹/₂, § 11-1202. This included the right to proceed without fear of being struck from behind, which the damage to the bicycle clearly indicated had occurred.[4] Considering the uncontroverted affirmative evidence of the victim's compliance with her cyclist responsibilities, contrasted to the evidence of appellant's erratic driving, the evidence was such that a jury could properly have inferred that the accident was caused by appellant's failure to maintain a proper lookout to avoid an accident, see *Lord v. Pennsylvania R. R. Co.*, 251 Md. 113, 119; *Murphy v. Bd. of County Comm'rs*, 13 Md. App. 497, 510; or if he had seen the victim he failed to maintain control of his vehicle while attempting to pass her. In either instance, the breach of his duty of due care caused the accident.

In addition (if further evidence of causation had been needed), the uncontroverted evidence showed that appellant left the scene of the accident without stopping to render aid in violation of Md. Code, Art. 66¹/₂, § 10-104. This evidence of flight from the scene was proper for the jury to consider and may give rise to an inference of guilt, see *Clay v. State*, 211 Md. 577, 585; *Montague v. State*, 3 Md. App. 66, 77; and indeed of a reckless disregard for human life. Furthermore, the jury could have considered appellant's denial that he had been in an accident that evening, *vis à vis* the strong, if not conclusive, physical evidence to the contrary.[5] See *Lilly v. State*, 212 Md. 436, 440. Denial under such circumstances might be indicative of appellant's state of mind, but could also have been relevant to appellant's state of sobriety or

---

was unpaved. It is therefore apparent from the evidence that the victim was not precluded from riding upon the roadway by Md. Code, Art. 66¹/₂, § 11-1205.1. Had the record reflected her presence on a proscribed highway, we note that where criminal negligence is the proximate cause of death, the fact that negligence of the victim may have concurred in producing the result would have been no defense. *See* Duren v. State, 203 Md. at 593-594.

4. The back wheel was totally crushed and destroyed. The front wheel appeared to be without damage.

5. Appellant admitted to the police that he had driven the automobile that night but denied having had an accident. The damage to the right front and side of his station wagon revealed paint from the bicycle and blood and flesh from the victim.

inebriation, explaining the erratic manner in which he operated his motor vehicle.

## Wanton and Reckless Disregard

But breach of duty and causation alone are not enough in a manslaughter by automobile case. The negligence must be "gross", and appellant argues that in no case has an appellate court in Maryland ever held evidence of intoxication alone to have been sufficient to show a "wanton or reckless disregard for human life", raising simple negligence to "gross" negligence. The strongest cases we have found along these lines indicate that drinking is a factor entitled to some weight "although not controlling". *Lilly, supra,* 212 Md. at 443; *Clay, supra,* 211 Md. at 585. In these cases other "flagrant violations" of the traffic law were coupled with drinking and other factors, such as flight, to meet the test of gross negligence.

On the other hand, in only one of the reported cases concerning manslaughter by automobile were we able to find substantial evidence of *intoxication*.[6] In all of the other cases, the degree of alcoholic influence on the driver was treated only as some evidence among other factors for the jury to consider in the overall question of gross negligence. In each of them, where alcohol was involved, the drinking amounted to something less than intoxication by statutory designation or factfinder's determination. The "overall question" to be decided in these cases is succinctly stated in *Clay, supra*:

> " . . . was the 'conduct of the defendant, considering all the factors of the case, . . . such that it amounted to a 'wanton or reckless disregard for human life.' ' " *Clay, supra,* 211 Md. at 584.

---

6. In Cummings v. State, 27 Md. App. 361, 387, the defendant had submitted to a test which indicated that his blood alcohol content was 0.24, well in excess of the statutory state of intoxication. See Md. Code, Courts and Judicial Proceedings Art., § 10-307 (e). Because there was also evidence of excessive speed in the case, the intoxication evidence was considered, but was not the sole controlling factor in finding that the evidence was sufficient to sustain the conviction of manslaughter by automobile.

As we read the automobile manslaughter cases,[7] the only reason the appellate courts of Maryland have not permitted extreme intoxication to have raised simple negligence to gross negligence by express holding, is that no case has ever been before the Court where the evidence showed a state of inebriation that would sustain a verdict of driving while intoxicated. Indeed, the language of the Court of Appeals indicates that it foresaw, but did not foreclose that possibility in the only case which dealt with the issue of intoxication separately from other "flagrant violations" of traffic laws.

In *Thomas v. State*, 206 Md. 49, the evidence showed that the driver had consumed 6 bottles of beer during the five and one-half hours before the accident. While the evidence also indicated excessive speed and defective brakes, the lower court had based its finding of guilt on intoxication alone. In reversing the trial court, the Court of Appeals recognized that:

> "Intoxication [was] the ground upon which the trial judge found the appellant guilty of gross negligence. In making this finding, he obviously considered insufficient the direct and uncontradicted evidence of the exercise by the appellant of care in driving just a few minutes, before the fatal accident both in making a left turn off a major road and in slowing down to a plainly cautious speed on approaching a school crossing." *Id.* at 56-57.

The Court pointed out that:

> "The only evidence relating in any way to intoxication was the fact that in a period of about five and a half hours the appellant had consumed six bottles of beer, two of them shortly before the accident, and the further fact that one of the police

---

7. See Judge Powers' enlightening summarization of all such then published in the dissenting opinion of Boyd v. State, 22 Md. App. 539, 554-563.

officers had noticed alcohol on his breath. Not one witness testified that he appeared to be intoxicated, the police made no tests to determine whether or not he was at all under the influence of alcohol and no such charge was made in the proceedings before the Trial Magistrate. We cannot regard the absence of such a charge as without significance [8] where, as in this case, the police were on the scene very shortly after the accident and interviewed the driver and had ample opportunity to observe his actions and demeanor. No testimony at all, either general or specific, was offered to show what the intoxicating effect of six bottles of beer consumed over the time here involved would be. (For a discussion of such tests, see *The Compulsory Use of Chemical Tests for Alcoholic Intoxication — A Symposium.* 14 *Md. Law Rev.* 111.) We think that the testimony as to how the defendant was driving

---

8. Our review indicated that appellant here had been charged with eight counts in his indictment. The docket entry provides a compendium:

"Presentment and Indictment filed. Charge: - (1) Murder, (2) Manslaughter, (3) Manslaughter by M/V, (4) Negligent driving, (5) Reckless driving (6) Driving intoxicated (7) Driving while impaired, (8) Hit and Run".

Only four of these were submitted to the jury, as was clear not only from the verdict itself, but from the handwritten yellow sheet setting forth the "Possible Verdicts" filled in by the jury. It included Counts 1, 3, 6 and 8 only. This was consistent with the trial court's instructions which read:

"Now, this case is going to be submitted to you on four charges. They are Murder, or Murder in the Second Degree as you hear it called, Involuntary Manslaughter, Driving while Intoxicated and Failure to stop after an Accident involving death or Serious Bodily Harm. Those are the four charges."

The record contains a Notice to Defendant that the prosecution abandoned the charge of murder in the first degree. No such notice or similar action on any other charge appears in the record. Furthermore, at the close of the State's case, the appellant filed a motion for judgment of acquittal which the court overruled "as to each count". Beyond that, the record is silent. Among the missing charges, unexplained in record or by brief, are charges of negligent driving and operating a motor vehicle in wanton or wilful disregard of safety, both of which go to the very heart of causation. We cannot understand the absence of these charges having gone to the jury, but the issue was not raised by appellant, and while we regard it with wonder, we attach no significance to it. *Compare* Thomas v. State, *supra*, 206 Md. at 57.

just before reaching the top of the hill and the curve down to the bridge, as to the erratic operation of the brakes, as to the appellant's efforts to regain safe control of the truck after its unexpected apparent reaction to a touch of the brakes, and as to his reasons therefor, and as to his last desperate effort to avoid running into the boys by trying to run the truck into the bridge wall also tend to negative a belief that he was intoxicated.

In this case, since there was no real dispute as to the facts, the credibility of witnesses, which can, of course, be better judged by the trial court which sees and hears them, is hardly involved. In these circumstances we have less hesitation in drawing a conclusion from the facts at variance with that of the trial judge. *In our opinion, the evidence with regard to intoxication was not sufficient to warrant a finding that the appellant was guilty of gross negligence within the established meaning of the statute in operating the truck at the time of the occurrence of the tragic accident, which gives rise to these cases.* Accordingly, the judgment in each case will be reversed and the cases will be remanded. The remand will not preclude a new trial, if the State elects to retry the charges." (emphasis added). *Id.* at 57-58.

By its detailed analysis and choice of language indicating that the evidence of intoxication was insufficient to prove gross negligence, the Court also indicated that if there had been sufficient evidence of intoxication in that case it would have upheld the judgment of guilty of manslaughter by automobile on that ground alone. If it believed that intoxication alone would have been insufficient, the Court could easily have said so, and spared a lengthy justification for reversing a factfinder on a finding of fact.

In the instant case, there *was* evidence of intoxication of an extreme nature, in addition to evidence of the negligent causative factors. This is attested by the jury's verdict of

guilty of driving while intoxicated. Because the State had sufficient evidence of causation, it relied primarily upon the degree of intoxication to prove wanton and wilful disregard of human life, and thus "gross" negligence.[9]

In proving reckless disregard by driving under the influence of a self-induced intoxication, the State was able to obtain substantial evidence of appellant's drinking and of his condition on the day of the accident. He had been in three bars between 5:00 p.m. and 10:00 p.m. and had five rum and Coca Cola drinks, which the barmaid testified was his favorite beverage. When his vehicle was seen at his home two hours after the accident, photographs showed two empty bottles (inferably rum bottles from their appearance) near a Coke can, on the front floor of the vehicle.

The two arresting officers were admitted into appellant's room after the accident, where they found him in an apparent state of intoxication:

> "A  He had his shoes off and was lounging on the bed. His clothes were disarranged.
>
> Q  Was he clothed lying on the bed?
>
> A  Yes, sir.
>
> Q  Would you describe his speech or mannerisms at that time?
>
> A  When he stood up his balance was swaying. His speech was slurred. In preparing to leave the residence he attempted to put his left shoe on his right foot.
>
> . . .
>
> A  Yes, sir. He was — he had an apparent odor of alcoholic beverages. His eyes were bloodshot. He

---

9. In light of that evidence of causation, it is not necessary for us to decide whether driving while intoxicated, in violation of Md. Code, Art. 66½, § 11-902, could provide evidence in and of itself sufficient to prove causation as well as wanton and wilful disregard of human life, in the event of a total absence of any other breach of duty to a deceased who is killed by a drunk driver. A minority of states have apparently held that if the fatal accident occurs while the driver is intoxicated it is *not* necessary for the prosecution to establish a causative link between the death and the intoxication. *See* cases cited in State v. Costello, 367 P. 2d 816, 820-822 (special concurring opinion).

stumbled when he tried to turn. As I said he tried
to put the wrong shoe on his right foot."

It was also pointed out that appellant denied any knowledge
of the accident and had to be told four times why he was
being arrested. He was also most unsteady on his feet.

"A When he first got up from the bed he was
shaky with his balance. I just took his arm and
brought him out. He kept stumbling. I had to hold
him up several times.

Q Did he ever fall?

A No, I helped him up."

Although this was evidence of his condition two hours
after the accident, it came in without objection.
Furthermore, the Court of Appeals has recognized, sub
silentio, that an accused's degree of sobriety one and
one-half hours after the accident, as well as indicia of
drinking inferred from empty containers, is admissible to
indicate an accused's state of sobriety in manslaughter by
automobile case. See *Wasileski v. State*, 241 Md. 323,
326-327.

But it was not his condition alone that evidenced his
wanton and reckless disregard for his fellow humans. That
he coupled such insobriety with driving an automobile on a
public highway made his conduct culpable. It is common
knowledge that an automobile is a dangerous
instrumentality, and we notice that fact judicially. Motor
vehicles cause more deaths in time of peace than do any
other manmade device. When appellant voluntarily, if not
intentionally, drank himself into a state wherein his nervous
system was numbed, adversely affecting his reflexes,
coordination, discretion and judgment, to drive an
automobile thereafter itself constituted a wanton or reckless
disregard for human life.

To drive while simply under the influence, to the extent
that one is incapable of safely driving his vehicle, is a direct
violation of the law. Md. Code, Art. 66½, § 11-902 (c). When
the degree of inebriation is adjudged to render a driver —

not only unsafe (§ 11-902 (c)) or even impaired (§ 11-902 (b)), but — beyond the most extreme condition of insobriety recognized by law, *i.e.*, intoxicated (§ 11-902 (a)), one who drives thus incapacitated may be inferred to have disregarded human life both wantonly *and* recklessly. When death ensues, inferentially or directly attributable to a breach of a duty by appellant, derived from his self-induced condition of intoxication, driving while drunk may be sufficient to raise the cause of death from simple negligence to gross negligence, as a factual determination to be made by the fact finder.

Having accepted the State's uncontroverted evidence in the light most favorable to it as we are compelled to do, we hold that such evidence was sufficient to permit a finding of gross negligence and hence sufficient to have convicted appellant of manslaughter by automobile.

In view of our discussion, we need hardly add that the evidence was also sufficient for the jury to have convicted appellant of driving while intoxicated.

### Prior Misconduct

Although we have found the evidence sufficient for the jury to have convicted appellant of driving while intoxicated and manslaughter by automobile, it is evident that the extensive testimony of prior drinking habits and related misconduct (including a conviction for driving while impaired) was both improper and prejudicial.

In *Ross v. State*, 276 Md. 664, 669-670, the Court of Appeals clearly and concisely set forth the general rule of exclusion, its exceptions and the exceptions to the exceptions:

> "The frequently enunciated general rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant

and inadmissible. *Harrison v. State*, 276 Md. 122, 345 A. 2d 830 (1975), *MacEwen v. State*, 194 Md. 492, 500, 71 A. 2d 464 (1950); *Young v. State*, 152 Md. 89, 91, 136 A. 46 (1927); *Weinstein v. State*, 146 Md. 80, 88, 125 A. 889, (1924); *Wethington v. State*, 3 Md. App. 237, 240, 238 A. 2d 581 (1968); *Gorski v. State*, 1 Md. App. 200, 202, 228 A. 2d 835 (1967). This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is 'substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.' C. McCormick, Evidence § 190 (2d ed. 1972).

. . .

There are exceptions to this general exclusionary rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of a crime on trial. *Wentz v. State*, 159 Md. 161, 164, 150 A. 278 (1930); *Cothron v. State*, 138 Md. 101, 110, 113 A. 620 (1921); *Chandler v. State*, 23 Md. App. 645, 650, 329 A. 2d 430, *cert. denied*, 274 Md. 726 (1974); *Wethington v. State, Gorski v. State*, both *supra*. Additional exceptions have also been recognized: When the several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other, and to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial, *Berger v. State*, 179 Md. 410, 20 A. 2d 146

(1941); and to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. C. McCormick, Evidence § 190, *supra*."

But the Court went on to point out:

" . . . that the introduction of evidence which shows other offenses by the accused should be subjected to rigid scrutiny by the courts because of the great potential for danger which characterizes it. *Berger v. State, Young v. State, Weinstein v. State, Gorski v. State,* all *supra*; see *Wethington v. State, supra.* As we said in *Berger*:

'. . . To come within the exception to the rule that evidence of previous offenses is irrelevant, there must appear between the previous offense and that with which the defendant is charged some real connection other than the allegation that the offenses have sprung from the same *disposition.* The exception does not go to the extent of sanctioning the admission of evidence of the *'propensity'* of the accused to commit crimes similar to that for which he has been indicted. . . .' 179 Md. at 414 (emphasis added).'

The disputed testimony here need hardly be subjected to rigid scrutiny to demonstrate its inadmissibility." 276 Md. at 671.

The very purpose expressed by the judge for admitting this testimony was to show appellant's "depraved-heart". When viewed in this light, relative to a charge of drunk-driving, which was also the evidence relied upon to prove wanton and reckless disregard for human life, what could be more prejudicial than prior acts of drunkenness? It has no purpose to serve in this case that could outweigh its

inherent prejudicial effect. See *Hoes v. State*, 35 Md. App. 61 (1977). Furthermore:

> " 'Such evidence compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the one immediately before it, and by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done.' " *Curry v. State*, 117 Md. 587, 593.

We cannot say that the testimony of appellant's history of drinking and related misconduct was harmless beyond a reasonable doubt. *Dorsey v. State*, 276 Md. 638, 646-659; see *Ross, supra*, 276 Md. at 674; *compare State v. Babb*, 258 Md. 547.

## Leaving the Scene of an Accident

We have found the evidence sufficient to sustain this conviction and we find further that the improperly admitted evidence of prior alcohol related misconduct was so unrelated to the uncontroverted evidence as to be harmless to this conviction, beyond a reasonable doubt. See *Dorsey, supra*. Because of its relevance to the issues to be retried on remand, *i.e.,* as evidencing a disregard for human life and a guilty state of mind, evidence that appellant left the scene of the accident will be admissible upon retrial.

## Illegally Imposed Sentence

Appellant points out that the judge imposed an illegal sentence for driving while intoxicated. The court imposed a two-year sentence based upon a second conviction of this offense. Md. Code, Art. 66½, §§ 11-902 (a), 17-101 (b) (i). Driving while intoxicated carried a maximum imprisonment of 1 year on the first offense and 2 years on a subsequent offense. However, appellant's previous conviction was for driving while impaired. Md. Code, Art. 66½, § 11-902 (b). Driving while impaired carries a maximum imprisonment of

2 months for the first offense and a maximum of 1 year for a subsequent offense. Md. Code, Art. 66½, § 17-101 (b) (ii), (iii). Appellant is correct in asserting that he cannot be sentenced as a second offender for driving while intoxicated until he has twice been convicted of that crime. The prior conviction for impaired driving will not suffice as a substitute.

Because our reversal of the driving while intoxicated conviction (as well as manslaughter by automobile) will cause the case to be remanded for a new trial, we will make an additional observation to avoid the repetition of an obvious error. Appellant was not charged as a second offender. To be convicted as a second offender, an accused must be charged as one. See *Sullivan v. State*, 29 Md. App. 622.

## Peremptory Challenges

Finally, appellant complains that he was denied 20 peremptory challenges although charged with second degree murder. Despite the fact that our holding leaves the issue moot, we point out to appellant that he did not comply with the local rules requiring written notice to the court within a prescribed time. See *Green v. State*, 19 Md. App. 683, 685-686.

> *Judgment of guilty of murder reversed.*
>
> *Judgment of guilty of manslaughter by automobile reversed and remanded for a new trial.*
>
> *Judgment of guilty of driving while intoxicated reversed and remanded for a new trial.*
>
> *Judgment of guilty of leaving the scene of an accident affirmed.*
>
> *Costs to be paid by Calvert County.*