# CAROLEANN WILLIS *v.* STATE OF MARYLAND

[No. 1249, September Term, 1982.]

*Decided June 9, 1983.*

The cause was argued before WEANT, BISHOP and ALPERT, JJ.

*Kathleen M. Brown, Assigned Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Alexander L. Cummings, Assistant Attorney General, William R. Hymes, State's Attorney for Howard County,* and *Mary K. O'Donnell, Assistant State's Attorney for Howard County,* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court.

In the early morning hours of 25 December 1981, Caroleann Willis, appellant, was the driver of a car involved in a two-vehicle accident in Howard County. Two occupants of the other automobile died as a result of the collision. Appellant sustained injuries to her head, ribs, and knee. After treatment for her injuries at St. Agnes Hospital, appellant consented to a blood alcohol test at the request of Officer Cook of the Howard County Police Department. The test results indicated a blood alcohol content (BAC) of 0.15 percent. Appellant was formally arrested six days later.

Appellant elected a jury trial in the Circuit Court for Howard County where she was found guilty of two counts of manslaughter by automobile, guilty of driving while intoxicated, and divers traffic violations. A total of five years' imprisonment was imposed. The last three years of that sentence were suspended and a five-year period of supervised probation was imposed to follow any term of incarceration. Additionally, fines totaling $600 were levied on appellant for the traffic violations.

Appellant challenges the admissibility of the BAC evidence and the sufficiency of the evidence to support her convictions for manslaughter by automobile.

A motion was filed to suppress evidence of the BAC test on the grounds that the test was administered in contravention of *Md. Code,* Courts and Judicial Proceedings (C&JP) Article § 10-303. That statute requires:

> The specimen of breath or blood shall be taken within two hours after the person is apprehended.

Also, C&JP § 10-309 (a) provides that "[e]vidence of chemical analysis is not admissible if obtained contrary to [the provisions of subtitle 3, Title 10 of the C&JP Article]." The interplay between C&JP § 10-303 and § 10-309 was examined by Chief Judge Orth in *Major v. State,* 31 Md. App. 590, 595, 358 A.2d 609 (1976):

> It appears that if a chemical analysis is made from a specimen taken more than two hours after the person is apprehended, evidence thereof may be excluded at the criminal trial.

This case requires us to determine when an individual is "apprehended" within the meaning of C&JP § 10-303. Appellant argues that the two-hour clock starts ticking as soon as the police officer has "the possibility of intoxication firmly in mind." The State contends, citing both *Webster's* and *Black's* dictionaries as authorities, that apprehension means arrest.

We reject both interpretations. The State's theory would lead to absurd results in this case, and many like it, when the actual arrest takes place several days after the accident. A sample taken within two hours of arrest would reflect the BAC level at the time it is withdrawn, not at the time of the incident. In the instant case, arrest occurred six days after the accident and, a blood sample taken at the time would be irrelevant to the issue of appellant's sobriety at the time of the accident. Whenever possible, we shun a construction of a statute which would lead to absurd consequences. *Pan Am. Sulphur v. State Dep't,* 251 Md. 620, 627, 248 A.2d 354 (1967) and cases cited therein.

Alternatively, appellant's construction is equally untenable. We do not believe the Legislature intended to require a police officer to choose between rendering life saving first-aid and administering a breathalyzer test upon arriving at the scene of a serious accident and suspecting that one of the drivers is intoxicated.

Our responsibility in construing the statute is to ascertain and effectuate the actual intent of the Legislature. *Pennsylvania Nat'l. Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 156, 416 A.2d 734 (1980). "[S]tatutes that deal with the same subject matter, share a common purpose, and form part of the same general system are in *pari materia* and must be construed harmoniously in order to give full effect to each enactment." *State v. Loscomb,* 291 Md. 424, 432, 435 A.2d 764 (1981). After considering the legislative history of C&JP Article §§ 10-303 through 10-309 and Transportation Article § 16-205.1, the Court of Appeals concluded that those statutes are to be construed in *pari materia. State v. Loscomb, supra,* 291 Md. at 435.

A simultaneous reading and harmonious construction of § 10-303 and § 16-205.1 convinces us that apprehended, as used in § 10-303, is the functional equivalent of "stop or detain" in § 16-205.1. Thus, the two-hour countdown commences when the accused is stopped or detained on the suspicion of driving or attempting to drive while intoxicated

or while under the influence of alcohol. A detention involves some display of force or authority, actual or implied.

We now turn to the facts of this case to determine when appellant was stopped or detained.

Officer Freeman of the Howard County Police Department came upon the accident prior to its having been reported. He made a quick inspection of both vehicles involved. He testified to a strong odor of alcohol coming from appellant's person who was in the driver's seat in one of the cars. Appellant's response to the officer was, "I was coming from George's. I hadn't had much to drink."

Other police and medical personnel responded to the scene and were assigned various duties. Appellant was treated for first-aid and sat in an ambulance for one hour prior to being taken to St. Agnes Hospital. Officer Cook arrived at the accident at approximately 1:45 a.m. and was told to follow appellant to the hospital and conduct the investigation from there. At one point, Cook opened the ambulance door and observed appellant but made no comment. At 3:00 a.m. Cook asked the attending physician at the hospital if he may talk with appellant and was given permission. Cook proceeded to read appellant form DR-15, the Motor Vehicle Administration's Advice of Rights to take a chemical test, and her *Miranda* rights. At that moment appellant was apprehended within the meaning of § 10-303. Appellant consented to a chemical test of her blood. Because the test was performed one hour and fifty minutes after "apprehension," the trial court properly denied the motion to suppress the results of the BAC test.

With regard to the sufficiency of the evidence to sustain her conviction for manslaughter under *Md. Code,* Art. 27, § 388, appellant argues there was inadequate proof of 1) gross negligence and 2) a reasonable connection between the act or commission of the appellant and the death that ensued. *Blackwell v. State,* 34 Md. App. 547, 557, 369 A.2d 153, *cert. denied,* 280 Md. 728 (1977). Appellant's BAC was

recorded at 0.15 percent. Under C&JP § 10-307 (e), this level was prima facie evidence of appellant's intoxication. (A BAC of 0.13 percent or more is prima facie evidence of intoxication.) Officer Cook testified there was an odor of alcohol about appellant's person, that she was unsteady on her feet, slurred her speech, and had bloodshot eyes more than two hours after the accident. The jury found appellant guilty of driving while intoxicated.

Appellant suggests that a close reading of the Maryland cases will reveal that the courts, when dealing with manslaughter by automobile, have generally found some element beyond mere intoxication. We suggest that appellant is reading too closely. Judge Lowe addressed this point in *Blackwell v. State, supra,* 34 Md. App. at 566:

> ... one who drives thus incapacitated [intoxicated] may be inferred to have disregarded life both wantonly *and* recklessly. When death ensues, inferentially or directly attributable to a breach of a duty by appellant, derived from his self-induced condition of intoxication, driving while drunk may be sufficient to raise the cause of death from simple negligence to gross negligence, as a factual determination to be made by the fact finder. [Emphasis in original.]

Appellant's degree of sobriety, as found by the jury, was sufficient to elevate simple negligence to gross negligence.

Accepting the evidence in the light most favorable to the State, we hold there was sufficient evidence to permit a finding of negligent causation. The State presented testimony of two witnesses from which it could be inferred that appellant ran a red light. The jury evidently believed this testimony as they found appellant guilty of failure to obey a traffic signal. The fatal accident occurred at the intersection in which appellant was found to have ignored the red light. Clearly, this evidence of causation, coupled with appellant's

intoxication constitutes sufficient evidence to sustain appellant's conviction for manslaughter by automobile.

*Judgment affirmed.*
*Costs to be paid by appellant.*