547 A.2d 1099.

**James Curtis BROWN**

v.

**STATE of Maryland.**

**No. 41, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Oct. 3, 1988.

R. William Hale, Rockville, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr.,

State's Atty., for Prince George's County on the brief of Upper Marlboro), for appellee.

Submitted before GILBERT, C.J., WENNER and POLLITT, JJ.

GILBERT, Chief Judge.

The overriding question we are asked in this appeal is whether two prior convictions for driving while intoxicated may be used to show the "gross negligence" element of manslaughter by automobile.

A jury in the Circuit Court for Prince George's County convicted Brown of manslaughter by automobile (Md.Code Ann. art. 27, § 388); reckless driving (Md.Transp.Code Ann. § 21–901.1(a) (Transp. Art.); negligent driving (Transp. Art. § 21–901.1(b)); driving while under the influence of alcohol (Transp. Art. § 21–902(b)); driving left of the center line (Transp. Art. § 21–301(c)); driving while license issued by another state is revoked (Transp. Art. § 16–303(g)); and unlawful possession of a vehicle, knowing that the vehicle identification number (VIN) has been removed (Transp. Art. § 14–107(f)). As a result of those convictions, Brown was sentenced to five years imprisonment with two years suspended. He was ordered to be placed on five years supervised probation when he was released from prison.

Brown vigorously attacks each of the convictions, asserting:

1. The trial judge thrice erred in admitting evidence of two prior convictions for driving while intoxicated: (i) during the State's case-in-chief, (ii) during the State's cross-examination of his wife, and (iii) during the State's cross-examination of appellant.

2. The trial court erred in not requiring the State to prove that appellant was represented by counsel at the time of the prior convictions.

3. The trial court erred in allowing to go to the jury the charge of possession of a vehicle, knowing that its vehicle identification number had been removed.

Brown maintains that the evidence concerning his prior convictions was not admissible for the stated purpose of proving intent or malice because neither intent or malice is an element of gross negligence. He also asserts that although the trial court and the prosecution contended throughout the trial that the prior convictions would not be used for impeachment purposes they were nevertheless employed for that impermissible purpose.

### The Facts

As a result of a head-on collision between a van driven by James Curtis Brown and a vehicle driven by Robert Dudding, the former was severely injured and the latter was killed. A test performed on blood drawn from Brown indicated a 0.11 alcoholic content. No independent eyewitness testimony of the accident was available.

Brown testified that the accident occurred as he was driving home from a party at a speed of about 35 miles per hour. He said that he had been at the party between the hours of 1 a.m. and approximately 4:30 a.m., during which time he had ingested 6 ounces or less of vodka. Brown contended that his drinking did not affect his driving, and the collision was caused by Dudding. Brown stated that he saw Dudding's vehicle approaching, and, as Dudding's vehicle neared, it veered into Brown's lane of traffic. Brown related that he slammed on the brakes, turned to the right, and went into a skid, which culminated in the fatal crash.

Two expert witnesses, who were qualified in accident investigation and reconstruction, testified that the point of impact was in the lane in which Dudding was driving. The witnesses also said that in their expert opinion the accident was caused by Brown's van crossing the center line and striking Dudding's car head-on.

During the State's case-in-chief, the trial court, over Brown's objection, permitted the State to introduce into evidence prior driving while intoxicated convictions meted to Brown, one in 1981 and the other in 1984. The trial judge explained her decision to admit the evidence by saying:

"One of the elements of manslaughter by motor vehicle, the State has to show that there was gross negligence, to wit, a wanton disregard for the safety of others on the road. I think this is a prime example that your client knew in 1981 that it is dangerous to drink and to drive. He got nine months, his privilege. They took him off of the road in Virginia because it's dangerous to drink and drive. He turned right around and another conviction. This time administratively they took his privilege to drive away for three years. He is therefore chargeable in the Court's view of his situation with the knowledge that drinking and driving is dangerous and it goes to prove— towards the proof of the wanton, reckless disregard for the lives of others. So I am going to permit you to use it ... but only as to count one, and I will give a limiting instruction.

Despite the State's avowed purpose for the introduction of the prior convictions, *i.e.* to demonstrate Brown's knowledge in relation to "negligence and recklessness," the State was nevertheless permitted to use the prior convictions to assail Brown's credibility and that of his wife. When Mrs. Brown testified in her husband's defense, she was asked about her knowledge of his prior convictions, and she admitted to knowing of at least one.

The prior convictions were again highlighted when the State cross-examined Brown himself. He was asked about his candor with his wife concerning the prior convictions. Brown was also asked about the effects that drinking had on his driving behavior in the two cases as compared to the effect he felt on the night of the fatal accident with Dudding.

Apparently believing that no "impeachment by prior convictions" had occurred, the trial judge instructed the jury:

"... I want to explain a little bit about what we call the law of prior convictions. In this particular case, the State in its case in chief introduced the driving record of this defendant from the Commonwealth of Virginia containing two prior convictions for driving while intoxicated. Ordinarily, a prior record of anybody cannot be used in a court of law unless it's a crime of moral turpitude. And driving while intoxicated is not a crime of moral turpitude, and the witness takes the stand—I mean the defendant takes the stand in his side of the case and gives his version, then the prior record of a crime of moral turpitude can then be used by the State on cross-examination only, and it goes only to his credibility.

In this particular case, there was a prior record. It was not used for the purpose of impeaching the defendant's credibility. Instead, it was used strictly as evidence of the wanton, willful disregard for the person or property of another which is part of the definition of the crimes that I will define for you later. So you are to consider the prior record very, very carefully because it's important to understand that just because a defendant may have committed a crime over here in no way means that he committed this. So I don't want any inferences drawn from the fact that he did it twice in Virginia, he did this. Banish that from your mind. But it is to be considered by you as evidence of a wanton, willful disregard for others, and not because he was guilty of this, because he is guilty in Virginia in '81 and '84. Very limited purpose of that prior record."

We turn now to the consideration of the issues.

## I.

■ The Court in *Blackwell v. State*, 34 Md.App. 547, 369 A.2d 153 (1977), reversed a conviction of driving while intoxicated because of the improper extensive testimony concerning the prior drinking habits and related misconduct of the accused. Although in *Blackwell* we thought the evidence sufficient to support the convictions, nevertheless,

we held that the prejudicial effect of the improper testimony was so great that we could not with any degree of certainty opine that its admission was harmless error beyond a reasonable doubt.

*Blackwell,* quoting from *Ross v. State,* 276 Md. 664, 669–70, 350 A.2d 680 (1976), reiterated the general rule applicable to the exclusion of evidence of "bad character":

" 'The frequently enunciated general rule in this state ... is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible. *Harrison v. State,* 276 Md. 122, 345 A.2d 830 (1975) ... [;] *MacEwen v. State,* 194 Md. 492, 500, 71 A.2d 464 (1950); *Young v. State,* 152 Md. 89, 91, 136 A. 46 (1927); *Weinstein v. State,* 146 Md. 80, 88, 125 A. 889 (1924); *Wethington v. State,* 3 Md.App. 237, 240, 238 A.2d 581 (1968); *Gorski v. State,* 1 Md.App. 200, 202, 228 A.2d 835 (1967). This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is 'substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.' C. McCormick, Evidence § 190 (2d ed. 1972).

· · · · ·

There are exceptions to this general exclusionary rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of a crime on trial. *Wentz v. State,* 159 Md. 161, 164, 150 A. 278 (1930);

*Cothron v. State,* 138 Md. 101, 110, 113 A. 620 (1921); *Chandler v. State,* 23 Md.App. 645, 650, 329 A.2d 430, *cert. denied,* 274 Md. 726 (1974); *Wethington v. State,* Gorski v. State, *both* supra."

34 Md.App. at 566–67, 369 A.2d 153. *See also State v. Werner,* 302 Md. 550, 556, 489 A.2d 1119 (1985); *Savoy v. State,* 64 Md.App. 241, 494 A.2d 957 (1985).

Even when the evidence of prior convictions is admissible for purposes other than to show an accused's propensity to commit the crime of which he is charged, its introduction "should be subjected to rigid scrutiny by the courts because of the great potential for danger which characterizes it." *Blackwell,* quoting *Ross,* 34 Md.App. at 568, 369 A.2d at 166.

In the case *sub judice,* the purpose expressed by the judge for admitting the testimony was to delineate defendant's "wanton and *willful* disregard for the person or property of another" (emphasis added). The late Judge Lowe wrote for this Court in *Blackwell,* 34 Md.App. at 568, 369 A.2d 153:

> "The very purpose expressed by the judge for admitting ... [the] testimony was to show appellant's 'depraved heart.' When viewed in this light, relative to a charge of drunk-driving, which was also the evidence relied upon to prove wanton and reckless disregard for human life, what could be more prejudicial than prior acts of drunkenness? It has no purpose to serve in this case that could outweigh its inherent prejudicial effect. See *Hoes v. State,* 35 Md.App. 61 [368 A.2d 1080] (1977)."

The trial court in the instant case was obviously persuaded by the State's argument that evidence of prior drunk driving convictions had been sanctioned for use in the State's case-in-chief in cases in California and by the United States Court of Appeals for the Fourth Circuit. That type of evidence was allowed in those cases to prove that the defendant was aware of the risk incurred when driving while intoxicated.

The two cases relied upon by the State were *People v. McCarnes*, 179 Cal.App.3d 525, 224 Cal.Rptr. 846 (1986), and *U.S. v. Fleming*, 739 F.2d 945 (4th Cir.1984). Neither is applicable to the matter now before us because, in each, the defendants there were charged with second degree murder, a crime requiring proof of intent or malice. The evidence of prior convictions admitted in the case at bar was allowed for its probative value as to manslaughter by automobile. Md.Ann.Code art. 27, § 388. Gross negligence is a prerequisite to a conviction under that statute; gross negligence is defined as a wanton or *reckless* disregard for human life, *Blackwell*, 34 Md.App. at 554-55, 369 A.2d 153 (emphasis added). While that definition is "deceptively akin" to the "wanton and *willful* disregard" definition of implied malice, the two are distinct because of the absence of the need to prove the element of willfulness in manslaughter by automobile cases. *Id.* at 556, 369 A.2d 153 (emphasis added).

*Blackwell*, 34 Md.App. at 568, 369 A.2d 153, teaches that whatever probative value the challenged evidence may have had was outweighed by its prejudicial effect, and it was error to admit it. The error requires reversal. *Blackwell, supra.*

 Aside from the highly prejudicial effect of the prior convictions, there is another reason why this case must be reversed, and that is, that the convictions were improperly used for impeachment purposes, despite the representation that they would not be so utilized. Moreover, the trial judge's instructions to the contrary did not cure the impermissible use. Drunk driving convictions are not within the categories of those convictions that are admissible for the purpose of impeaching the credibility of a witness. *See State v. Duckett*, 306 Md. 503, 506, 510 A.2d 253 (1986). *See generally* McClain, *Maryland Procedure, Maryland Evidence*, § 609.1 (1987); Cleary, *McCormick on Evidence*, Chap. 5 § 43 (1984, 1987 Supp.). They are not "infamous crimes," *see Bane v. State*, 73 Md.App. 135, 533 A.2d 309 (1987), and *Hairston v. State*, 68 Md.App. 230, 511

A.2d 73, *cert. denied*, 307 Md. 597, 516 A.2d 567 (1986); nor are they of the ilk of lesser crime that tends to indicate that the witness is unworthy of belief. *Ricketts v. State,* 291 Md. 701, 436 A.2d 906 (1981).

We stated in *Bane v. State*, 73 Md.App. at 142, 533 A.2d 309, that a trial court should be mindful, when inquiring into the defendant's criminal history, that there is more than mere credibility being attacked. "A more pervasive potential for prejudice must be considered, namely, the prejudice that is likely to emanate from advising the trier of fact that the ... defendant on trial before it is already a convicted criminal.... Such prejudice is especially dangerous when the earlier crime is similar to that for which the defendant is currently being tried." *Id.*

■ Even assuming, *arguendo,* that Brown's prior drunk driving convictions were of the type admissible for impeachment purposes, the dangerous potential for misuse by the jury was accentuated by the State's use of those convictions to attack not only Brown's credibility but also that of his wife. A witness's credibility may be assailed by proof of his or her own prior convictions, not those of the convictions of the person as to whose reputation the witness is testifying. There was nothing in Mrs. Brown's direct testimony that suggested a need to challenge her credibility by questioning her concerning her husband's prior convictions.

## II.

■ The third reason why this case must be reversed is that the trial judge erred in permitting the State to cross-examine Brown as to his past driving convictions without first requiring the State to prove that he either had assistance of counsel or waived counsel when the prior convictions were entered. Brown's argument is grounded on *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). That case held that permitting a conviction attained without the assistance of counsel to be used against a person either to support guilt or enhance punishment for another offense

is a violation of the right to counsel guaranteed by the Sixth Amendment to the Constitution. *See also Johnson v. State,* 9 Md.App. 166, 174, 263 A.2d 232 (1970).

Brown testified that when he was convicted the first time for driving while intoxicated he was not represented by counsel. Despite defense counsel's objection, the trial court allowed the admission of the prior conviction without requiring the State to prove that Brown had been afforded his Sixth Amendment rights. In doing so, the court acted in contravention of the principle expressed in *Burgett.*

The record is silent with respect to whether Brown had counsel at the time of his second conviction, and no inquiry was made or objection noted.

### III.

Brown also contends that the charge of unlawful possession of a vehicle without a VIN should be reversed because of the prejudicial effect of the prior convictions. We agree.

Brown's explanation as to the lack of a VIN in his vehicle was that he had had a new engine installed and the interior of the vehicle remodeled. He suggested that the VIN was removed by the person remodeling the interior of the van. He professed lack of knowledge as to the removal of the VIN. If the jury believed Brown, it might well have acquitted him. We are unable to say that the State's introduction of Brown's prior convictions did not lead to the jury's disbelief of Brown's explanation, and, therefore, we are unable to subscribe to the State's theory that there was "no spill over" into the non-driving offenses. Because we are unable to conclude that the impermissible use of prior convictions did not affect the conviction, we shall also reverse it.

JUDGMENTS REVERSED. CASE REMANDED FOR A NEW TRIAL.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.